UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANDY HUMM, ANN NORTHROP, and
ANDY HUMM and ANN NORTHROP d/b/a
GAY USA,

                           Plaintiffs,

                - against -

MSNBC CABLE, LLC,
NBCUNIVERSAL MEDIA, LLC,
COMCAST CORPORATION,
VERSANT MEDIA, LLC,
JONATHAN CAPEHART,
APOLLO GLOBAL MANAGEMENT, INC.,
VERIZON COMMUNICATIONS, INC. t/a
VERIZON COMMUNICATIONS,
YAHOO, INC., JOHN and JANE DOES, INC.
1 through 10, JOHN and JANE DOES, LLC
1 through 10, and JOHN and JANE DOES
INDIVIDUALS 1 through 10,

                         Defendants.
--------------------------------------------------------X

Case No.      CV

**COMPLAINT**

**PLAINTIFFS DEMAND A TRIAL BY JURY PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 38(b)**

       Plaintiffs, ANDY HUMM, ANN NORTHROP, and ANDY HUMM and ANN

NORTHROP d/b/a Gay USA, by their attorneys, THE PENKOVSKY LAW FIRM, P.C., allege

as follows:

### JURISDICTION and VENUE

       1.      This is a lawsuit for copyright infringement arising under the United States

Copyright Act, 17 U.S.C. §§ 101, *et seq*.

       2.      This Court has original and exclusive subject matter jurisdiction over the

copyright infringement claims, pursuant to 28 U.S.C. §§ 1331 and 1338.

       3.      This lawsuit also asserts tort claims at common law for unfair competition and

misappropriation all arising from, and/or related to, the same transactions or occurrences as the copyright infringement claims alleged herein.

4.    This Court also has original subject matter jurisdiction over the New York State tort claims at common law for unfair competition and misappropriation pursuant to 28 U.S.C. § 1338(b) as these claims are "joined with ( ) substantial and related claim(s) under the copyright laws."

5.    This court also has supplemental jurisdiction of the New York State tort law claims pursuant to 28 U.S.C. § 1367 as these claims are so related to the copyright infringement claims alleged in this action which copyright infringement claims as alleged herein are within the original jurisdiction of this Court.

6.    Venue is proper in this district court pursuant to 28 U.S.C. §§ 1391 and 1400.

## THE PARTIES

### I.    PLAINTIFFS

#### a. PLAINTIFF ANDY HUMM

7.    At all times mentioned herein, plaintiff ANDY HUMM, (hereafter "HUMM") was and is an individual, residing in the State of New York, County of New York.

8.    HUMM is a professional journalist engaged in the business of news gathering, and producing news stories, analysis, and commentary in print, audio, video, cable, and other media formats, including Gay USA, a television news program, distributed over the internet, by cable television, satellite and other means of distribution.

9.    HUMM's journalistic efforts include gathering news stories including breaking news stories about the Lesbian, Gay, Bisexual, Transgender, and Queer (hereafter "LGBTQ+")

2

community.

10.    HUMM has covered LGBTQ+ news since 1974 and HIV/AIDS news since the

inception of the pandemic in 1981 as a reporter for both gay and mainstream print, radio, and

television news outlets.

11.    HUMM's work has included educating people on HIV/AIDS both through

activism and his journalistic coverage. HUMM's work has appeared in The New York Times,

The New York Post, POZ, and other print media, television, radio, and other media.

12.    HUMM was human rights columnist for GothamGazette.com. From 1996-2001,

he was the editor of Social Policy magazine, a leading journal of labor and community

organizing that serves as a forum for intellectual exchange among progressive academics and

activists from around the globe and across the United States.

13.    HUMM served as a spokesperson for the Coalition for Lesbian and Gay Rights

and helped guide New York City's LGBTQ+ rights law through the City Council.

14.    HUMM has provided floor coverage of both the Republican Party and Democratic

Party National Conventions from 1988 - 2000.

15.    HUMM has interviewed numerous people from both the public and private

sectors, including Governors Bill Clinton and George Pataki; Senators Bill Bradley, Joseph

Lieberman, Chuck Schumer, and Bob Dole; Representatives Newt Gingrich, Dick Cheney, and

Richard Gephardt. HUMM's interviews with activists include his interviews of Jesse Jackson,

Gloria Steinem, Al Sharpton, and Larry Kramer. HUMM has also interviewed actors Matthew

Broderick and Ian McKellen, as well as Sir Alan Hollinghurst, the English novelist, poet, short

story writer and translator, Ned Rorem, the Pulitzer Prize winning American neoromantic

composer and diarist, and Martin Duberman, the award winning, playwright, professor, historian, and gay rights activist.

16.    HUMM has hosted WNET-TVs *Informed Sources* (1991-95), a weekly prime-time public affairs roundtable about city issues. At WNET in 1991, he also hosted segments of the *Live Wire* and *Thirteen Live* public affairs programs and was moderator for the national PBS special *Out in America*. In 1997, he co-hosted *Out in New York* with Kate Clinton. He was a regular contributor to PBS television's *In the Life*, a televised gay news magazine.

17.    HUMM has been interviewed on the CBS Evening News, *The Geraldo Show, Charlie Rose, Hannity & Colmes* on Fox TV, by Chris Matthews on the now defunct *America's Talking* cable television created and operated by NBC, *The Maury Povich Show, the Alan Colmes,* and *Barry Farber* radio shows, and numerous other New York City television newscasts. HUMM has appeared as a frequent guest on NY-1 TV's *Inside City Hall*. His editorials have appeared in The New York Times, New York Post, Daily News, and Newsday.

18.    HUMM's work has been honored by the New York Press Association, New York University, the AIDS and Adolescents Network, Advocates for Youth, the Parents and Friends of Lesbians and Gays, the Cincinnati Gay and Lesbian Coalition, the Human Rights Campaign, the NYC Public Advocate, the NYC Comptroller, the NYC Council, the Bar Association for Human Rights of Greater NY, and the Arkansas Lesbian and Gay Task Force. Gov. Bill Clinton named him an "Arkansas Traveler" in 1990. He was also a Charles Revson Fellow at Columbia University in 1996-97. HUMM served as a New York City Human Rights Commissioner from 1991 to 1993.

19.    In 1986 at the height of the AIDS crisis, Humm became the first Director of

Education at the Institute for the Protection of Lesbian and Gay Youth (renamed in 1991 the

Hetrick-Martin Institute for lesbian and gay youth after its founders, Dr. Emery Hetrick and Dr.

Damien Martin). As Director of Education until 1995, HUMM led his team in conducting

trainings for young people and youth-serving professionals on issues of AIDS and homosexuality

at a time these trainings were in high demand and vitally needed to curb the spread of HIV and

create greater understanding and acceptance of gay people who were disproportionately affected

by the raging HIV pandemic. HUMM and his team conducted thousands of these trainings in

New York City and around the country at a time when most schools and many youth agencies did

not deal with these subjects. He was also a leader of the coalition campaign to get the Board of

Education to approve mandatory explicit AIDS education in the schools--including free condom

availability in high schools--and served on the Board's AIDS Advisory Council and Multicultural

Advisory Council. He also served at this time as a Board Member of Advocates for Youth, a

national organization dedicated to implementing accurate sex education in schools and

youth-service settings.

**b. PLAINTIFF ANN NORTHROP**

20.    Ann NORTHROP (hereafter "NORTHROP") is a veteran journalist, television

news producer, and political activist.

21.    NORTHROP began her journalism career at *The National Journal* in Washington,

D.C. where she covered all three branches of the federal government, and its numerous agencies

and departments. NORTHROP then moved to New York City to work at WCBS-TV on the

five-days-a-week morning talk show *Woman*.

22.    In the 1970's NORTHROP was active in the movement to end the War in

5

Vietnam and became involved with the newly evolving feminist movement.

23.     In connection with her work with the rising feminist movement NORTHROP helped to construct an article analyzing the 1972 U.S. Presidential candidates for the first issue of *Ms. Magazine*, the American feminist magazine co-founded in 1971 by the journalist and social – political activist Gloria Steinem.

24.     When WCBS-TV ended *Woman*'s television run, NORTHROP expanded upon her journalistic efforts working in various areas of broadcasting, including scheduling technical facilities for the entire WCBS-TV network's operations, working sports events for ABC-TV Sports, and writing TV criticism in her nationally syndicated newspaper column, along with additional articles for Ms. Magazine, and numerous other publications.

25.     NORTHROP moved on to head the New York office for the landmark study of thousands of straight and gay couples, published as *American Couples: money, work, sex* (New York, Morrow 1983) by Drs. Pepper Schwartz and Philip Blumstein. For this Study NORTHROP recruited participants and helped to conduct lengthy, in-depth, personal interviews with a select sample of participants.

26.     Beginning in 1981, NORTHROP returned to daily television production as a writer-producer for ABC's *Good Morning America*.

27.     NORTHROP was then recruited by a former executive producer for *Good Morning America* and returned to CBS News and transformed the format of its *Morning News* into a two-hour, daily talk show.

28.     NORTHROP became producer and coordinating producer, of the *CBS Morning News*, where she planned and executed the program every day for five years, covering a broad

6

range of subjects.

29.    During her tenure as a producer at *CBS Morning News*, NORTHROP worked with the original hosts, Diane Sawyer and Bill Kurtis, and their successors, including Forrest Sawyer, Maria Shriver, Phyllis George, Charlie Rose, Meredith Vieira, and numerous other CBS News correspondents.

30.    NORTHROP also produced *CBS Morning News*' hard news coverage daily, a five-minute hard news segments at the top of each half hour. In that role NORTHROP decided what news to cover, and produced the segments originating from remote locations and in local facilities by satellite feeds and land lines.

31.    NORTHROP also worked with the entire international CBS News operation on a daily basis including foreign and domestic producers, correspondents, and bureau chiefs.

32.    After five years at CBS, NORTHROP resigned her position and soon thereafter began employment as an AIDS educator and educator on homosexuality at New York's Hetrick-Martin Institute for Lesbian and Gay Youth ("HMI"), a social service agency.

33.    For HMI, NORTHROP visited schools and youth agencies throughout the New York City metropolitan area educating students, teachers, counselors and other youth workers about the AIDS epidemic, the HIV virus, and how to avoid contracting it.

34.    NORTHROP engaged in literally thousands of question and answer sessions on homosexuality, speaking personally about her life as a lesbian, and answering all questions posed to her.

35.    NORTHROP's work at HMI led her to write curricula on AIDS, the HIV virus, and the LGBTQ+ community and her appearing at conferences teaching others on how to use her

curriculum to teach on these subjects.

36.    NORTHROP then recognized the relationship of her work as an AIDS educator with her work in the peace movement and the feminist movement. As a result, in 1988 NORTHROP joined the nascent group ACT UP/New York (the AIDS Coalition to Unleash Power) and became deeply involved in "direct action" in the streets, participating in hundreds of demonstrations.

37.    NORTHROP served as a board member of the Gay Games, held in New York City in 1994; she helped create and served on the board of a new gay think tank, the Institute for Gay and Lesbian Strategic Studies, that became the Williams Institue.The Williams Institute, based at UCLA School of Law is the leading research center on sexual orientation and gender identity law and public policy ensuring "that facts - - not stereotypes - - inform laws, policies, and judicial decisions that affect the LGBTQ+ community. https://williamsinstitute.law.ucla.edu/about/who-we-are/ [Website last viewed on November 17, 2025].

38.    NORTHROP wrote a weekly column for *QW*, a gay and lesbian weekly magazine, which covered gay and lesbian news, politics, and also wrote a regular column for *LGNY*, the New York gay newspaper during its early years. *LGNY* was eventually renamed *Gay City News*.

39.    In connection with her work as a social and political activist, NORTHROP has trained other activists on effective messaging with the news media.

40.    NORTHROP helped found the Lesbian and Gay Alumnae Association of Vassar College and was the only openly lesbian or gay delegate in the New York delegation to the 1992 Democratic Convention.

41.     NORTHROP has been the lead speaker at many events, including the 25th anniversary celebration of the Stonewall Rebellion. NORTHROP has received numerous honors, and is featured in the books *Making History* by Eric Marcus, [discuss] *Wolf Girls at Vassar* by Anne MacKay, and *Queer in America* by Michelangelo Signorile, among notable books others.

**c. PLAINTIFFS HUMM and NORTHROP d/b/a *Gay USA***

42.     In 1996 NORTHROP returned to television production with the weekly national cable television program, *Gay USA*, as both co-host and co-executive producer with co-plaintiff HUMM.

43.     At all times mentioned herein *Gay USA*, was and is, an hour-long weekly TV show that provides coverage of local, national and international news, analysis, and commentary of interest to the LGBTQ+ community. But, in fact, *Gay USA* is watched by people of all ages, races, genders and sexual orientations.

44.     At all times mentioned herein HUMM and NORTHROP as co-anchors of *Gay USA* go out in the field to cover newsworthy events, including national political conventions, local political debates, pride parades, weddings, funerals, AIDS demonstrations, and national and local political stories throughout the USA, and the world concerning government legislation and policies pertaining to the LGBTQ+ community.

45.     At all times mentioned herein *Gay USA*'s programming also includes interviews with guests in the studio, ranging from political figures to authors and entertainers.

46.     At all times mentioned herein, HUMM, NORTHROP, and HUMM and NORTHROP, d/b/a *Gay USA,* maintain an archive library of *Gay USA* programs at New York University's ("NYU") Fales Library for purposes of preserving an archive of moving pictures of

the history of the LGBTQ+ rights movement, including *Gay USA*'s news programming that gave virtually the only regular television attention to the nascent AIDS crisis and the ongoing fight for LGBTQ+ rights on the show *Pride and Progress* the predecessor of the national *Gay USA* television program. https://gaycitynews.com/19-years-of-lgbt-video-history-preserved/ (Website last viewed on November 4, 2025).

47.     *Gay USA*'s archive of motion pictures first housed at NYU's Fales Library beginning in 2009 comprises thousands of hours of moving images. *Id.*

48.     *Gay USA's* archive of LGBTQ+ news programming is appropriately housed at NYU's Fales Library because "NYU has one of the most important gender studies programs in the country," Taylor [Marvin Taylor, the Fales director] said in 2009. *Id.*

49.     The *Gay USA* archive was and is a natural fit for Fales because it complements Fales Library's "Downtown New York" collection that documents the arts scenes from the 1970's through the '90's, also "a world decimated by the AIDS epidemic," the library's release said in 2009. *Id.*

50.     *Gay USA*'s Fales Library archive is a source of research by educators, researchers, scholars and many others including producers of motion pictures, television programs, documentaries. and news programs.

## II. DEFENDANTS

## a. THE MSNBC DEFENDANTS

51.     Upon information and belief, at all times mentioned herein, defendant MSNBC CABLE, LLC (hereafter "MSNBC") was and is a foreign corporation authorized to conduct business in the State of New York with principal offices in the State, County, and City of New

York and was and is conducting business in the State, County, and City of New York, and within this judicial district.

52.     Upon information and belief, at all times mentioned herein, MSNBC was and is engaged in the business of producing television news, analysis, and commentary programs and other television programs, including documentaries, and entertainment programs.

53.     Upon information and belief, at all times mentioned herein, defendant MSNBC was also engaged in the business of producing programming for television, including news stories, analysis, commentary and was and is also engaged in the businesses of Cablecasting, Motion Pictures, Licensing, Publishing, Streaming and other efforts in the business of News Programming and Entertainment for release in Theaters, and on Cable Television, and other business initiatives.

54.     Upon information and belief, at all times mentioned herein, defendant NBCUNIVERSAL MEDIA, LLC (hereafter "NBCU") was and is a foreign limited liability company authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York and was and is conducting business State, County, and City of New York, and within this judicial district.

55.     Upon information and belief, at all times mentioned herein, defendant NBCU was and is engaged in the business of producing programming for television, including news and commentary programs and was and is also engaged in the businesses of Broadcasting, Cablecasting, Motion Pictures, Licensing, Publishing, Streaming and other efforts in the business of News Programming and Entertainment for release in Theaters, on FCC licensed Broadcast, on

Cable Television, and was and is engaged in other business initiatives for a profit.

56.    Upon information and belief, at all times mentioned herein, defendant NBCU was and is the owner of the internet website msnbc.com.

57.    Upon information and belief, at all times mentioned herein, defendant COMCAST CORPORATION (hereafter, "COMCAST") was and is a foreign corporation authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York, and within this judicial district.

58.    Upon information and belief, at all times mentioned herein, defendant COMCAST was and is engaged in the business of Cable Communications, producing programming in various media, operating production studios to produce motion pictures and programming, including news and commentary programs, for television, and was and is also engaged in the businesses of Broadcasting, Cablecasting, Motion Picture Production and Distributions, Licensing, Publishing, Streaming, operation of Theme Parks throughout the United States, ownership of Professional Sports Teams business efforts in the business of News Programming and Entertainment for distribution and display Theaters, and on FCC licensed Broadcast, on Cable Television, and was and is engaged in other business initiatives.

59.    Upon information and belief, at all times mentioned herein, defendant COMCAST was and is a global media and technology company, and was and is conducting business with and through Comcast Cable, NBCU and other business entities.

60.    Upon information and belief, COMCAST was and is, a leading provider of broadband, video, voice, wireless, and other services to residential customers under the Xfinity

brand and also provides these and other services to business customers including selling advertising in the State, County, and City of New York, and within this judicial district.

61.    Upon information and belief, beginning in or about May 2025, and at all times thereafter and as mentioned herein, defendant VERSANT MEDIA, LLC (hereafter, "VERSANT") was and is a foreign limited liability company authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York and within this judicial district.

62.    Upon information and belief, at all times mentioned herein, MSNBC was and is a corporate division of NBCU, and was and is wholly and/or partially owned by NBCU.

63.    Upon information and belief, at all times mentioned herein, NBCU controlled MSNBC's business, operations, legal affairs, collected income from and derived profits from and assumed the liabilities of MSNBC from MSNBC's business operations including MSNBC's production and distribution of programming, including news and commentary programming on MSNBC.

64.    Upon information and belief, at all times mentioned herein, NBCU was and is a corporate division of COMCAST and was and is wholly and/or partially owned by COMCAST.

65.    Upon information and belief, at all times mentioned herein, COMCAST controlled the business, operations, legal affairs, including MSNBC's production and distribution of programming, including news and commentary programming on MSNBC and collected income from, and derived profits from and assumed the liabilities of both MSNBC from MSNBC's business operations.

13

66.     Upon information and belief, at all times mentioned herein, NBCU and MSNBC were corporate divisions of COMCAST and NBCU and MSNBC are and were wholly and/or partially owned by COMCAST.

67.     Upon information and belief, at all times mentioned herein, COMCAST controlled NBCU's business, operations, legal affairs, collected income from and derived profits from and assumed the liabilities of NBCU from NBCU's business operations including NBCU's production and distribution of programming, including news and commentary programming on MSNBC.

68.     Upon information and belief, at all times mentioned herein, COMCAST controlled MSNBC's business, operations, legal affairs, collected income from and derived profits from MSNBC's business operations including MSNBC's production and distribution of programming, including news, analysis, and commentary programming on MSNBC.

69.     Upon information and belief, in or about May 2025, defendant COMCAST spun off MSNBC to VERSANT.

70.     Defendants MSNBC, NBCU, COMCAST, and VERSANT are hereinafter referred to collectively as the "MSNBC DEFENDANTS."

71.     The MSNBC DEFENDANTS consist of a web of interrelated Delaware entities authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and were and are conducting business in the State, County, and City of New York.

72.     Upon information and belief, the MSNBC defendants, for profit also license footage ("Clips") of their entertainment and news programs at their website, located on the

internet at https://www.universalclips.com/catalog-items;k=msnbcNBCU

[Website last viewed on November 17, 2025].

73.     Plaintiffs are concerned that their copyrighted Audiovisual Works that are the subject of this lawsuit may have entered the MSNBC defendants' library and that the MSNBC defendants continue to profit from plaintiffs' news stories, analysis, and commentary as contained in the plaintiffs' copyrighted Audiovisual Works that are the subject of this lawsuit.

74.     Upon information and belief, at all times mentioned herein, plaintiffs allege that all of the activities mentioned in this Complaint concerning the MSNBC defendants were and are conducted in the State, County, and City of New York and were and are directed to the public within this judicial district and other parts of the State of New York, the United States and the world.

75.     Upon information and belief, at all times mentioned herein, plaintiffs allege that the MSNBC defendants transact or have transacted business within this judicial district for monetary profit and other gain and benefit, and are subject to the jurisdiction of this Court.

**b. DEFENDANT JONATHAN CAPEHART**

76.     Upon information and belief, at all times mentioned herein, defendant JONATHAN CAPEHART ("CAPEHART") was and still is a natural person, residing in and conducting business in, was and still is domiciled in, and maintains his principal place of business in the State, County, and City of New York.

77.     Upon information and belief, at all times mentioned herein, defendant CAPEHART was and was and is engaged in the business of producing, operating, creating, and hosting news programs in which he presents news stories, analysis, and commentary by various

15

media to the public.

78.    Upon information and belief, at all times mentioned herein, defendant CAPEHART was and was and is an independent contractor who provides and has provided his services of producing, operating, creating, and hosting news programs in which he presents news stories, analysis, and commentary for the MSNBC defendants, and upon information and belief other persons and entities in the journalism businesses and industries in various media to deliver said programs to the public at large.

79.    Upon information and belief, at all times mentioned herein, defendant CAPEHART was and is employed by the MSNBC defendants, and provides and provided his services of producing, operating, creating, and hosting news programs in which he presents news stories, analysis, and commentary for the MSNBC defendants to be displayed and performed by various media to the public at large.

80.    That defendant CAPEHART was the host of the MSNBC news program *The Last Hour* first cablecast, performed, and displayed to the public on November 23, 2022.

81.    That defendant CAPEHART was the host of the MSNBC news program *The Last Hour* first cablecast, performed, and displayed to the public on November 23, 2022 and its subsequent appearances on demand on the internet on MSNBC.com and other internet sites.

82.    That defendant CAPEHART incorporated HUMM's 1987 exclusive and historic video on said episode of *The Last Hour* and performed, and displayed the HUMM video to the public on November 23, 2022 and subsequent appearances on demand on the internet on MSNBC.com and other internet sites.

83.    That defendant CAPEHART incorporated HUMM and NORTHROP's November

16

22, 2022 *Gay USA* Pelosi episode on said episode of *The Last Hour* and performed, and

displayed HUMM and NORTHROP's November 22, 2022 *Gay USA* Pelosi episode and

HUMM's Pelosi Interview Video to the public on November 23, 2022 and subsequent

appearances on demand on the internet on MSNBC.com and other internet sites.

84.    That all aforementioned uses of the HUMM Video and HUMM and

NORTHROP's November 22, 2022 *Gay USA* Pelosi Episode were performed and displayed by

defendant CAPEHART without plaintiffs' permission.

85.    Upon information, at all times mentioned herein, defendant CAPEHART was

aware that the HUMM Video and HUMM and NORTHROP's November 22, 2022 *Gay USA*

Pelosi Episode which were performed and displayed on the November 23, 2022 *The Last Hour*

were copyright protected Audiovisual Works exclusively owned by plaintiffs HUMM and

NORTHROP.

86.    Upon information and belief, at all times mentioned herein, defendant

CAPEHART negligently, recklessly and/or intentionally chose to violate plaintiffs HUMM and

NORTHROP's exclusive rights in their copyright protected Audiovisual Works exclusively

owned by plaintiffs HUMM and NORTHROP.

87.    Upon information and belief, at all times mentioned herein, defendant

CAPEHART was aware that plaintiffs copyright protected Audiovisual works were available for

licensing but instead defendant CAPEHART negligently, recklessly and/or intentionally chose to

violate plaintiffs HUMM and NORTHROP's exclusive rights in their copyright protected

Audiovisual Works instead of seeking permission from NORTHROP or HUMM for the use of

the respective Audiovisual Works.

88.    Upon information and belief, at all times mentioned herein, defendant CAPEHART chose to violate plaintiffs' exclusive rights in their Audiovisual Works and was aware that plaintiffs copyright protected Audiovisual works were available for licensing but instead defendant CAPEHART negligently, recklessly and/or intentionally chose to violate plaintiffs HUMM and NORTHROP's exclusive rights in their copyright protected Audiovisual Works by copying, editing, and incorporating plaintiffs' copyright protected Audiovisual Works into the November 23, 2022 *The Last Hour* and/or doing so at the direction of others, and/or directing others to do so despite the fact that he knew or should have known that plaintiffs' created and owned the exclusive rights protected by Copyright in plaintiffs' Audiovisual Works.

89.    Upon information and belief, at all times mentioned, by defendant CAPEHART's use of plaintiffs' copyright protected Audiovisual Works, defendant CAPEHART intended to create a news scoop[1] on cable television with a story about Speaker Pelosi stepping down that other broadcast and cablecast news outlets did not have or did not yet have a chance to perform or display to the public.

---

1 Scoop is an informal term used in journalism. The word connotes originality, importance, surprise or excitement, secrecy and exclusivity. Stories likely considered to be scoops are important news, likely to interest or concerning many people. A scoop is typically a new story, or a new aspect to an existing or unfolding story. Generally the story is unexpected, or surprising, and/or a former secret. This means the scoop typically must come from an exclusive source. Events open to a multitude of witnesses generally cannot become scoops, (e.g. a natural disaster, or the announcement of a scientific breakthrough at a press conference). However, exclusive news content is not always a scoop, as it may not provide the requisite importance or excitement. An example of this may be interviews with a local resident about a local event. A scoop may be also defined retrospectively; a story may come to be known as a scoop because of a historical change in perspective of a particular event. Due to their secret nature, scandals are a prime source of scoops (e.g. the Watergate scandal by Washington Post journalists Woodward and Bernstein).

Scoop in this context may also be a verb. To scoop another journalist is to acquire a scoop-like story before the other, typically by initiative. So, to make a scoop also implies that the journalist in question is hard-working and professional. Scoops typically raise the profile of the journalist that makes them.
The word scoop is of American origin, first referenced in 1874. [
[http://www.etymonline.com/index.php?term=scoop Online Etymology Dictionary ] ]
https://en-academic.com/dic.nsf/enwiki/4550195 [Website last viewed on November 18, 2025]

90.    Upon information and belief, at all times mentioned herein, defendant CAPEHART derived monetary profit and other consideration and benefits from the unauthorized uses of the HUMM video and plaintiffs' *Gay USA* Pelosi Episode.

91.    Upon information and belief, at all times mentioned herein, plaintiffs allege that all of the activities mentioned in this Complaint concerning the Defendant CAPEHART were and are conducted in the State, County, and City of New York and were and are directed to the public at large within this judicial district, other parts of the State of New York, within the United States and the world.

92.    Upon information and belief, at all times mentioned herein, plaintiffs allege that CAPEHART transacts or has transacted business within this judicial district for monetary profit and other gain and benefit, and is subject to the jurisdiction of this Court.

**c. THE YAHOO DEFENDANTS**

93.    Upon information and belief, at all times mentioned herein, defendant YAHOO, INC., (hereafter, "YAHOO") was and is a foreign corporation authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and conducts business in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York, and within this judicial district.

94.    Upon information and belief, at all times mentioned herein, defendant APOLLO GLOBAL MANAGEMENT, INC., (hereafter "APOLLO") was and is a foreign corporation authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and conducts business in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York, and within

this judicial district.

95.     Upon information and belief, at all times mentioned herein, defendant VERIZON COMMUNICATIONS, INC. trading as VERIZON COMMUNICATIONS (hereafter, "VERIZON") was and is a foreign corporation authorized to conduct business in the State of New York with principal offices in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York and was and is conducting business in the State, County, and City of New York and within this judicial district.

96.     Upon information and belief, at all times mentioned herein, defendants APOLLO and VERIZON were and are engaged in a joint venture to operate and control the business of defendant YAHOO for profit.

97.     Defendants YAHOO, APOLLO, and VERIZON, are hereinafter referred to collectively as the "YAHOO DEFENDANTS."

98.     The YAHOO DEFENDANTS consist of a web of interrelated foreign corporations and /or entities authorized to conduct business in the State of New York all with principal offices in the State, County, and City of New York and were and are conducting business in the State, County, and City of New York.

99.     Upon information and belief, at all times mentioned herein, plaintiffs allege that all of the activities mentioned in this Complaint concerning the YAHOO defendants were and are conducted in the State, County, and City of New York and were and are directed to the public within this judicial district, other parts of the State of New York, within the United States and the world.

100.     Upon information and belief, at all times mentioned herein, plaintiffs allege that

20

all of the activities mentioned in this Complaint concerning the YAHOO defendants were and are

conducted in the State, County, and City of New York and were and are directed to the public at

large within this judicial district and other parts of the State of New York, within the United

States, and the world.

101.    Upon information and belief, at all times mentioned herein, the YAHOO

defendants transact or have transacted business within this judicial district for monetary profit

and other gain and benefit, and are subject to the jurisdiction of this Court.

**c. JOHN AND JANE DOE DEFENDANTS**

102.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued as

JOHN and JANE DOES, INC. 1 through 10, (the "Unknown Incorporated Defendants") and

therefore sues said Unknown Incorporated Defendants by said fictitious names. Plaintiffs will

seek leave from the Court to amend the Complaint to show the true names and capacities of all

Unknown Incorporated Defendants when the same have been ascertained.

103.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued as

JOHN and JANE DOES, LLC 1 through 10, (the "Unknown LLC Defendants") and therefore

sues said Unknown LLC Defendants by said fictitious names. Plaintiffs will seek leave from the

Court to amend the Complaint to show the true names and capacities of all Unknown LLC

Defendants when the same have been ascertained

104.    Plaintiffs are ignorant of the true names and capacities of the Defendants sued as

JOHN and JANE DOES INDIVIDUALS 1 through 10, (the "Unknown Individual Defendants")

and therefore sues said Unknown Individual Defendants by said fictitious names. Plaintiffs will

seek leave from the Court to amend the Complaint to show the true names and capacities of all

Unknown Individual Defendants when the same have been ascertained.

105.    Upon information and belief, that at all times mentioned the Unknown Incorporated Defendants, the Unknown LLC Defendants, and Unknown Individual Defendants (hereafter, collectively the "Unknown Defendants") alone or in concert, individually or through corporate, affiliate and/or other business relationships have infringed Plaintiffs' copyrighted Audiovisual Works which are the subject of this lawsuit by reproducing, displaying publicly, and distributing same to the public within this judicial district, and throughout the State of New York, the United States and the World.

106.    Upon information and belief, at all times mentioned herein, plaintiffs allege that the Unknown Defendants transact or have transacted business within this judicial district for monetary profit and other gain and benefit, and are subject to the jurisdiction of this Court.

107.    Upon information and belief, at all times mentioned herein, plaintiffs allege that all of the activities mentioned in this Complaint concerning the Unknown Defendants were and are conducted in the State, County, and City of New York.

108.    These cause of action arises from conduct by the respective Defendants within this judicial district, the State of New York, the United States, and the World.

**NATURE OF THE ACTION**

109.    It has been said, "the Constitution and the Copyright Act recognize the critical importance of giving creators exclusive rights over their works." These legal pillars have empowered those who gather and report news to secure the fruits of their labor and to report the news to the public at large and also to those in too often neglected communities.

110.    Independent journalism is vital to a vibrant democracy and an engaged and

informed public. Of great importance is journalism that engages with a particular community. By engaging with that particular community, journalists bring the news, issues, and interests of that particular community to that community and engage not only that community but also the public at large.

111.    Hence, coverage of the news, issues, and interests of a particular community extend knowledge of those issues beyond the community to the general public. Engaged journalism is crucial to the knowledge of all communities and preserves the vibrancy of the community, our nation, and the world.

112.    "Engaged journalism is an inclusive practice that prioritizes the information needs and wants of the community members it serves, creates collaborative space for the audience in all aspects of the journalistic process, and is dedicated to building and preserving trusting relationships between journalists and the public."
https://americanpressinstitute.org/practice-engaged-journalism-to-better-serve-your-community/
[Website last viewed on November 10, 2025].

113.    Journalism that engages with and serves the needs of a particularized community is extraordinarily valuable and critically important. It has become even more valuable as the media landscape of the United States of America has become prone to mergers and acquisitions. The resultant monopolization provides for fewer outlets for reporting news. The need for advertisers' and subscribers' dollars thus leads large scale, i.e., the mainstream media, to focus on the news and issues of the majority. Consequently, particularized communities and their needs for news reporting and commentary are not merely overlooked, but generally ignored.

114.    Plaintiffs HUMM and NORTHROP and their collective effort on co-producing

and co-hosting the news program *Gay USA* are exemplars of engaged journalism that reports on news and interests of a particularized community. Their journalistic efforts reach that particularized community. Their efforts also reach a general public that seeks information about that particularized community.

115.    Each week, plaintiffs provide the viewing public with the latest news and developments in the Lesbian, Gay, Bisexual, Transgender, and Queer (hereafter "LGBTQ+") community and HIV/AIDS and other health news in the United States and from around the world. Their decades of experience in journalism and activism, provide the historical context for the stories they cover. While their program focuses in the belief in LGBTQ+ liberation, it also aims to be fair to those who oppose LGBTQ+ liberation and rights and also to provide critical perspectives to groups within the LGBTQ+ liberation movements working for change.

116.    Plaintiffs' long-running TV show originates at Manhattan Neighborhood Network (hereafter "MNN") in New York City and is distributed nationally by Free Speech TV on the DISH Satellite Network, DirecTV and many cable systems around the country. Gay USA is available on YouTube and as an audio podcast on iTunes. Their TV show has become a beacon in the effort to accurately and fairly cover LGBTQ+ and HIV/AIDS issues on television and other media.

117.    Defendants herein infringed a copyrighted news video that HUMM produced in 1987 of his exclusive and historic interview with newly elected United States Representative from the San Francisco area, Nancy Pelosi. HUMM conducted his exclusive and historic interview on October 11, 1987 at the Second National March on Washington for Lesbian and Gay Rights in Washington, D.C. The interview was conducted while Representative Pelosi was

marching with constituents and other supporters of LGBTQ+ rights. HUMM's interview with then-Representative Pelosi covered her history as an advocate and her intended legislative agenda to extend and assure rights to Lesbian and Gay people and her intention to seek funding to fight the scourge of AIDS. The interview concludes with her speaking directly to the camera and imploring then-President Ronald Reagan to sign legislation to fund research in the fight against AIDS.

118.    HUMM's Pelosi Interview Video first ran on October 15, 1987 on Gay Cable Network on Public Access Television from New York City.

119.    In the November 2022 national elections in the United States of America, voters elected a majority of Republicans to the United States House of Representatives (hereafter "House"). On Thursday, November 17, 2022, the Democratic Party lost its majority and Speaker of the House Nancy Pelosi, a Democrat from California, announced that she would step down from the Democratic leadership in the House in January 2023 and would assume the title of Speaker Emerita.

120.    From her initial election in a special election in June 1987 and the time of HUMM having interviewed her in October 1987, Ms. Pelosi rose to become a political giant. In 2007 she had become the first woman to be elected as Speaker of the House, a position which she held until 2011 when the Democratic Party lost its House majority in the 2010 national election. She was again elected as Speaker of the House in 2019 announcing on November 17, 2022 following the Republicans winning a majority in the House in the midterm elections that she would step down from Democratic leadership in the House in January 2023.

121.    It was therefore fitting that HUMM and NORTHROP as co-hosts and co-

Executive Producers of Gay USA would salute Speaker Pelosi's illustrious and important career as a national leader. Known for her political acumen, Speaker Pelosi championed equal rights for all people. She became known for her efforts to assure the equal rights of women, people of color, people with disabilities, the LGBTQ+ community, and all oppressed and marginalized people.

122.    Pelosi spearheaded the historic repeal of the United States' military's discriminatory "Don't Ask, Don't Tell" policy. She passed the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act, a law advancing justice for the millions of Americans at risk from hate violence. As Speaker, she twice passed the watershed Equality Act amending the Civil Rights Act of 1964 to ban discrimination on the basis of sexual orientation and gender identity in jobs, housing, and public accommodations. Speaker Pelosi also led the charge to fight back against the Trump Administration's ban on transgender people serving openly in the United States military.

123.    Speaker Pelosi's announcement that she would step down from leadership was more than a story for the LGBTQ+ community. Her resignation was a news story of considerable national and international interest. HUMM and NORTHROP prepared and produced a segment about Speaker Pelosi's career that was shown on *Gay USA*.

124.    On Tuesday, November 22, 2022, *Gay USA*, released its Nancy Pelosi episode and premiered it on the internet, on YouTube. In that episode of *Gay USA*, HUMM and NORTHROP included in their segment about Speaker Pelosi the exclusive and historic 1987 interview of then newly elected Representative Nancy Pelosi that HUMM conducted with her when he was producing news stories at the 1987 Second March on Washington for Lesbian and Gay Rights.

26

125.    On Thursday, November 24, 2022, two days later, Gay USA's Nancy Pelosi episode was released for its premier cablecast on MNN. Over the course of the week, this episode was shown at five different times to a national audience via Free Speech TV on the Dish Network, Direct TV, and other outlets.

126.    Then came MSNBC. MSNBC cablecast its highly rated news, analysis, and commentary show, *The Last Word*, on Wednesday, November 23, 2022. The day between the Tuesday, November 22, 2022 premier internet stream of *Gay USA* and the Thursday, November 24, 2022 premier cablecast of *Gay USA*'s Speaker Pelosi episode MSNBC chose to show its unlawfully copied heart of *Gay USA*'s Speaker Pelosi Episode.

127.    On the evening of Wednesday, November 23, 2022, MSNBC's *The Last Word* without permission cablecast the heart of *Gay USA*'s November 22 and November 24, 2022 Nancy Pelosi Episode and reproduced, displayed and performed it in the MSNBC program of news, analysis, and commentary, *The Last Word*.

128.    Unbeknownst to plaintiffs, or anyone associated with Gay USA, MSNBC's *The Last Word*, also reproduced, displayed and performed HUMM's exclusive and historic 1987 interview with then Representative Pelosi and cablecast plaintiffs' copyrighted Audiovisual Works at least once during MSNBC's *The Last Word* with Lawrence O'Donnell. However, that evening, Jonathan Capehart, a well-known out gay journalist was the substitute host of *The Last Word*.

129.    MSNBC's unauthorized and unlawful usages of *Gay USA*'s Nancy Pelosi episode and HUMM's Pelosi Interview Video infringed the copyrights in the Plaintiffs' respective copyrighted Audiovisual Works. *The Last Word* directly copied, performed, and publicly

displayed HUMM's Pelosi Interview Video as it was publicly displayed on the November 22, 2022 edition of *Gay USA*; all without plaintiffs' permission.

130.    MSNBC also distributed its November 23, 2024 episode on numerous other platforms, including on the internet, on MSN.com, and on numerous Yahoo.com platforms. To date, MSNBC and NBC Universal have refused to provide all usages of the Gay USA and HUMM copyrighted works that it unlawfully used and unlawfully granted permission to third parties.

131.    For its unlawful use of plaintiffs' copyrighted Audiovisual Works, MSNBC also altered plaintiffs' copyright information as it had been displayed in the *Gay USA* Nancy Pelosi episode.

132.    The November 22, 2022 *Gay USA* episode ran a copyright source designation ("bug") in the lower left corner of HUMM's Pelosi Interview Video.

133.    MSNBC's *The Last Word* obliterated *Gay USA*'s copyright information. MSNBC did so by creating a banner in the upper left corner of HUMM's copyrighted video interview with Nancy Pelosi in a typeface MSNBC used in its banner headline across the bottom of the frame in which *The Last Hour* was displayed to the public. The MSNBC banner reads "OCTOBER 11, 1987" altering the copyright information from *Gay USA*'s November 22, 2022 Nancy Pelosi episode. *The Last Word* also ran a banner headline across the bottom of the frame of HUMM's video interview. That banner, generated by *MSNBC*, covered the word "USA" [from Gay USA] in its entirety and also partially covered the word "Gay."

134.    MSNBC thereby altered the plaintiff's copyright information rendering the source of the videos undetectable. MSNBC's alterations violate Chapter 12 of the 1976 Copyright Act

which prohibits alteration of copyright management information. *See also Mango v. BuzzFeed, Inc.*, 356 F.Supp.3d 368, 376-378 (S.D.N.Y. 2019). The alterations also raise the likelihood that those presently UNKNOWN DEFENDANTS altered, or participated in the alteration, of plaintiffs' copyright management information. These UNKNOWN DEFENDANTS are also liable for copyright infringement and are liable for plaintiffs' damages.

135.    On that Wednesday, November 23, 2022, and all other ensuing unauthorized usages, MSNBC infringed and misappropriated the heart of the *Gay USA*'s Pelosi episode and infringed HUMM's 1987 Pelosi interview. MSNBC reproduced, performed, and displayed plaintiffs' copyrighted Audiovisual Works as the foundation and in structuring its substantially similar news story about Speaker Pelosi, thereby misappropriated *Gay USA*'s Speaker Pelosi news story. Such misappropriation by the highly-rated MSNBC program *The Last Word* thereby reasonably created in the minds of the viewing public, who only saw *Gay USA*'s Nancy Pelosi episode after November 23, 2022, the erroneous impression that *Gay* USA had instead misappropriated a news story from a larger and wealthier cable network and its program, *The Last Word*.

136.    But it was MSNBC that misappropriated *Gay USA*'s news story that focused on Speaker Pelosi's Lesbian and Gay Rights advocacy and even used *Gay USA*'s copyrighted Audiovisual Works. MSNBC's *The Last Word* hosted by Jonathan Capehart focused on Speaker Pelosi's Lesbian and Gay Rights advocacy. Capehart reproduced, performed and displayed HUMM's exclusive and historic 1987 interview with Representative Pelosi. Capehart then conducted an interview with James Matthew Brown, as a self-described "non-heterosexual" U.S. Navy Sailor. Mr. Brown also attended the October 1987 March on Washington for Lesbian and

Gay Rights.

137.    During Capehart's interview of Mr. Brown, Mr. Brown showed pictures of himself at the October 1987 March including a picture of him with Representative Pelosi, his representative in Congress. Mr. Brown also commented on HUMM's video of HUMM's exclusive and historic video interview with Pelosi that MSNBC used without permission that he [Brown] had never seen that video before.

138.    This misappropriation gives rise to a colorable claim for misappropriation of a news story competing to an audience interested in Speaker Pelosi's career and her efforts to assure the rights of the LGBTQ+ community. *See International News Service v. Associated Press*, 248 U.S. 215 (1918); *See also Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876 (2d. Cir. 2011).

139.    MSNBC's usage of the plaintiffs' copyrighted Audiovisual Works was clearly and obviously intentional. MSNBC altered the logo of *Gay USA* that the *Gay USA* program used in its cablecast and other usages in an effort to prevent the public as recognizing plaintiffs as owners of the copyrighted Audiovisual Works that MSNBC reproduced, performed, and displayed on *The Last Word.*

140.    MSNBC manipulated and degraded these copyright source designations. MSNBC could easily have contacted plaintiffs to request permission for usage of the interview. Instead, first, MSNBC chose to infringe intentionally plaintiffs' copyrighted Audiovisual Works. Second, it misappropriated the subject matter of plaintiffs' *Gay USA*'s Nancy Pelosi Episode to prepare a segment based fully upon *Gay USA*'s Nancy Pelosi Episode. Finally, MSNBC partially removed and altered plaintiff's copyright management information.

141.    For purposes of providing contact and other relevant information about its
program, *Gay USA* maintains a website, https://gayusatv.org. On its website contact information
for both HUMM and NORTHROP is posted. *Gay USA* also regularly fields requests for licensing
of its historic and exclusive news stories and regularly licenses its video footage and programs to
producers of motion pictures, news stories, documentaries and those engaged in educational
efforts.

142.    Plaintiffs were unaware that their copyrighted audio visual works had been
infringed by MSNBC and NBC Universal until late December 2022 when HUMM received a tip
from an MSNBC viewer and fan of *Gay USA* that HUMM's video and the heart of *Gay USA*'s
Pelosi Episode was being shown on the internet at MSNBC's website, and on YouTube.

143.    Plaintiffs' attorney sent a cease and desist letter to NBC Universal's attorneys in
December 2022. NBC Universal's attorneys represented that MSNBC and NBC Universal had
ceased and desisted from running plaintiffs' copyrighted Audiovisual Works. However, as late as
May 2023, MSNBC and NBC Universal continued to run plaintiffs' Audiovisual Works in The
Last Word on numerous websites, including the Yahoo.com websites.

144.    Plaintiffs' attorney informed MSNBC and NBC Universal of these continued
unauthorized usages of plaintiffs' copyrighted audio visual works. Upon information and belief,
it was only because of plaintiffs' attorney's efforts that these websites eventually took down *The
Last Word* in about May and June 2023, a full five months after NBC Universal's attorneys
represented that *The Last Word* with plaintiffs' copyrighted Audiovisual Works had been
removed from public performance and display.

145.    The MSNBC defendants have acted with total disregard of plaintiffs' rights as

journalists and copyright owners. The MSNBC defendants continued to reap profits while fraudulently representing that they were no longer reproducing, displaying, and performing plaintiffs' copyrighted Audiovisual Works.

146.    With the same larcenous intent as MSNBC's refusal to remove plaintiffs' copyrighted audiovisual from public performance these defendants have continually refused to disclose to plaintiffs' attorney, despite numerous requests and the promise of confidentiality, all usages of plaintiffs' copyrighted Audiovisual Works and to negotiate for a fair license fee to be paid to plaintiffs and for MSNBC and the other unauthorized and infringing users to disgorge their profits from their numerous infringements.

147.    Plaintiffs' attorney has engaged in a fruitless effort to settle plaintiffs' claims against the defendants herein.

148.    Thereby, defendants have necessitated the filing of this lawsuit.

**ALLEGATIONS AS TO ALL COUNTS ALLEGING UNAUTHORIZED USAGE OF**
***GAY USA NOVEMBER 22, 2022 INCLUDING INTERVIEW WITH***
***REP. NANCY PELOSI AT THE 1987 MARCH ON WASHINGTON***
***FOR LESBIAN AND GAY RIGHTS PELOSI***
**(THE *"GAY USA PELOSI EPISODE"*)**

149.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 148 of this Complaint as if fully set forth herein.

150.    At all times mentioned herein Plaintiffs were and are journalists and were and are engaged in the business of journalism.

151.    Plaintiffs gather, investigate, prepare, and report news stories, analysis, and commentary with a focus in producing news stories, analysis, and commentary that concern the LGBTQ+ community.

32

152.    Plaintiffs' news stories, analysis, and commentary have appeared, and continue to appear, in a variety of media and they publish their news stories, analysis, and commentary in print, radio, podcasts, video, and television.

153.    Plaintiffs news stories, analysis, and commentary are about newsworthy persons and events in, and about, the LGBTQ+ community, and include the community's ongoing efforts to achieve equality and to assure their civil and human rights and equality under the law despite often being faced with political and social opposition.

154.    Plaintiffs news stories, analysis, and commentary are of interest to the LGBTQ+ community, as well as the general public.

155.    A significant part of plaintiffs 'news stories, analysis, and commentary are their work as Co-Hosts and Co-Executive Producers of the long running weekly television program *Gay USA*.

156.    At all times mentioned herein *Gay USA* delivered and continues to deliver its television program to the public via the Internet, on YouTube, Free Speech TV, on the DISH Satellite Network, DirecTV, and many cable systems around the country. *Gay USA* is also available as an audio podcast on iTunes.

157.    *Gay USA* and plaintiffs HUMM and NORTHROP (hereafter *Gay USA* and plaintiffs HUMM and NORTHROP are collectively referred to as "plaintiffs") also make their news stories, analysis, and commentary as reproduced, performed, and displayed to the public on *Gay USA* available for licensing to the public through NYU's. Fales Library.

158.    Plaintiffs' news stories, analysis, and commentary from *Gay USA* (hereafter, "Plaintiff's news stories, analysis, and commentary from *Gay USA*" are referred to as "*Gay USA*

Publications") are also available to be viewed at Fales Library for research purposes.

159.    Plaintiffs' *Gay USA* Publications as made available at Fales Library are of interest to numerous persons and entities, including news organizations (including competitors of defendants herein), artists, educators, historians, film producers, and other person and entities interested in, and concerned with, the art, history, joys, travails, persecution, and liberation of, the LGBTQ+ community and its numerous contributions to the cultures and politics of the United States of America and the international community.

160.    Plaintiffs through NYU's Fales Library have licensed their copyrighted Audiovisual Works for reproduction, performance, display, and distribution to the public by print, television, electronic, and other means to various publishers, news and entertainment organizations and companies, among others, in conformity with a fee structure.

161.    By entering into these limited usage licenses plaintiffs make their copyrighted materials available for viewing by the public within this judicial district, and throughout the United States and the World.

162.    On November 22, 2022 plaintiffs created a one hour *Gay USA* television program which included a news report about Speaker Nancy Pelosi who had announced that she would step down from the Democratic leadership in the House in January 2023 (hereafter "*Gay USA*'s Pelosi Episode").

163.    *Gay USA*'s Pelosi Episode incorporated plaintiff HUMM's 1987 exclusive video interview with Pelosi while she marched in the 1987 Second March on Washington for Gay and Lesbian Rights.

164.    In addition to the HUMM video, plaintiffs' *Gay USA* Pelosi Episode included

34

additional reporting, analysis, and commentary about Speaker Pelosi's announcement that she was stepping down from House Leadership.

165.     At the time plaintiffs created *Gay USA's* Pelosi Episode, plaintiffs knew that there were no other news programs that would have access to the HUMM video. Plaintiffs rapidly pulled the video and created a news story about Speaker Pelosi stepping down that was exclusive to them which they promptly used to illustrate Speaker Pelosi's career long support for the LGBTQ+ community. Although the HUMM video had been created thirty-five years prior, plaintiffs' use of the video presented a new angle on the news and an exclusive news story to which no other organization had access nor attempted to access.

166.     The *Gay USA* Pelosi Episode is wholly original unto plaintiffs and is copyrightable subject matter under the Copyright Laws of the United States of America.

167.     Plaintiffs have complied in all respects with the United States Copyright Laws and haves secured the exclusive rights and privileges in and to the Copyright in their *Gay USA* Pelosi Episode.

168.     The Register of Copyrights has duly issued plaintiffs a Certificate of Copyright Registration for their Audiovisual Work entitled *Gay USA November 22, 2022 including interview with Rep. Nancy Pelosi at the 1987 March on Washington for Lesbian and Gay Rights*, namely Registration Number PA 2-484-903, effective June 27, 2024. A copy of said Certificate is annexed as Exhibit "1."

169.     Plaintiffs have always been, and are now, the owner of all rights, title and interest in and to their Audiovisual Work and the Copyright therein, and said Copyright is valid and subsisting and in full force and effect.

**ALLEGATIONS AS TO ALL COUNTS ALLEGING UNAUTHORIZED USAGE
OF *ANDY HUMM INTERVIEWS U.S. REPRESENTATIVE NANCY PELOSI AT THE
SECOND NATIONAL MARCH ON WASHINGTON D.C. - OCTOBER 11, 1987*
("HUMM's PELOSI INTERVIEW VIDEO")**

170.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1

through 169 of this Complaint as if fully set forth herein.

171.    Nancy Pelosi was first elected to the United States House of Representatives in a

special election in 1987 that took place in a district in San Francisco, California. The 1987

special election for the House of Representatives occurred when the sitting Representative passed

away during her term.

172.    At the time, the special election was a cause for the LGBTQ+ community who

supported Harry Britt, an American politician and gay rights activist who had worked with

Harvey Milk until Milk's 1978 assassination. At the time of the special election for the House,

Britt was serving on the San Francisco Board of Supervisors.

173.    The special election also occurred at a time when the LGBTQ+ community had

experienced significant advances in assuring their rights. These advances also occurred at a time

the LGBTQ+ community experienced terrible political violence and assassinations of local

politicians.

174.    In the latter part of the twentieth century San Francisco became known as a hub of

LGBTQ+ life in the United States. Among the important political figures of that time was Harvey

Milk, the first openly gay man to be elected to public office in California.

175.    In 1977, Milk was elected to the San Francisco Board of Supervisors. During his

time in office, he worked tirelessly to pass legislation to protect LGBTQ+ people and prevent

passage of anti-LGBTQ+ legislation. His bill barring discrimination based upon sexual orientation in housing, public accommodations, and assuring the rights of LGBTQ+ people in public accommodations, housing, and employment passed the Board of Supervisors by a vote of 11 – 1 and was signed into law in April 1978.

176.    Only months later, in November 1978, Milk and San Francisco's Mayor George Moscone were assassinated by former Supervisor Dan White who had cast the sole vote against Milk's legislation. Milk's assassination rattled the nation and cast a pall of fear over the LGBTQ+ community.

177.    The 1980's were also a time when HIV/AIDS was raging through the gay community and there was considerable activism to bring a cure to the disease. The San Francisco community saw a need to elect a representative to the national government to prevent the spread of a deadly disease. This need was particularly compelling because the Reagan administration since its assuming office in 1981 had ignored this national health threat.

178.    Into this failure by the Reagan Administration stepped Harry Britt who ran as a Democrat in the Primary Election for the U.S. House of Representatives in California's Sixth Congressional District. His major opponent was fellow Democrat Nancy Pelosi. Britt enjoyed significant support during the primary. However, in the open primary for the House seat, Nancy Pelosi narrowly defeated Harry Britt with 38,927 votes to Harry Britt's 35,008 votes.

179.    With no candidate earning more than fifty percent of the primary vote a runoff election was held. In the runoff election on June 2, 1987, the Democratic candidate Pelosi defeated the Republican candidate Harriet Ross with 63 percent of the vote to Ross's 30 percent.

180.    The question remained: who was Nancy Pelosi, and could she be an effective

advocate for the LGBTQ+ community that the community believed Harry Britt would have been?

181.    Local support groups had formed to assist those afflicted with AIDS, the Memorial Quilt began to come into existence, grassroots political organizations formed, and the formidable organization ACT UP (AIDS Coalition To Unleash Power) was founded in New York City in March 1987.

182.    The momentum grew and a second march on Washington, D.C. was held in October 1987. (The first march had been held in 1979.)

183.    HUMM, an enterprising free lance reporter dedicated to covering LGBTQ+ issues, went to Washington, D.C. to gather news stories from the 1987 March on Washington for Lesbian and Gay Rights held on October 11, 1987.

184.    Among the reported 750,000 people who marched that day, HUMM spotted newly elected House Representative Nancy Pelosi. HUMM was very aware of the then current events that had played out in San Francisco, including the assassination of the iconic Harvey Milk and the subsequent electoral battles of Harry Britt and the then unknown Nancy Pelosi.

185.    HUMM gathered his film crew and met up with Representative Pelosi, who had been in office for fewer than four months, to ask her some questions about what he believed to be her unexpected appearance at the March.

186.    HUMM's interview revealed that Representative Pelosi was dedicated to serving her constituents, many of whom she acknowledged were gay. She stated that she believed that she was there to work for her constituents and recounted the other marches she had participated in directed to fighting HIV/AIDS and to assure lesbian and gay rights.

38

187.    During her interview Representative Pelosi also disclosed to HUMM that she had already joined as a co-sponsor of legislation to provide more money to fight HIV/AIDS and legislation to protect lesbian and gay rights. In closing this exclusive, historic and on location interview HUMM put Representative Pelosi on the spot - he asked her to address President Reagan about what she wanted him to do about AIDS.

188.    Looking at the camera, Representative spoke to Reagan. She beseeched President Reagan to stop viewing AIDS as a political issue and to address it as a serious health issue. She asked him to heed his health advisers and sign legislation to fight AIDS. Representative Pelosi never backed down from the stance she took that day and as she told HUMM.

189.    This video is of great historical and political importance because it records Pelosi as she began her career in the House and her vocal and her resolute advocacy and support for lesbian and gay rights and her determination to become a leader in passing legislation to fund the fight against HIV/AIDS.

190.    The video is also of great importance to the LGBTQ+ community because it records one of the first House Representatives to recognize the importance of funding the fight against HIV/AIDS against a backdrop of an administration in Washington, DC that had chosen to ignore this health emergency and the need to fight the scourge that the LGBTQ+ community had been suffering.

191.    The *Advocate*, citing Nancy Pelosi's record, praised her as "a passionate LGBTQ+ ally." The Thursday, November 17, 2022 edition of the *Advocate* also recounts HUMM's 1987 video interview of Speaker Pelosi, writing "[i]n a video from the March, a reporter observed that Pelosi was one of the few members of Congress participating. She replied that she was there not

only to show solidarity with the many San Franciscans who had traveled to D.C. for the event, but to demonstrate support for a gay civil rights bill and increased funding to address the AIDS crisis (her first speech to the House dealt with AIDS). She also noted that she had taken part in AIDS Walks and Pride parades in San Francisco."[2]

192.    This is the copyright protected video interview that defendants unlawfully used and thereby violated HUMM's exclusive rights in his copyrighted Audiovisual Work.

193.    HUMM's Pelosi Interview Video is wholly original unto HUMM and is copyrightable subject matter under the Copyright Laws of the United States of America.

194.    HUMM has complied in all respects with the United States Copyright Laws and has secured the exclusive rights and privileges in and to the Copyright in his Audiovisual Work, the 1987 video interview with Representative Pelosi.

195.    The Register of Copyrights has duly issued HUMM a Certificate of Copyright Registration for his Audiovisual Work entitled *Andy HUMM interviews U.S. Representative Nancy Pelosi at the Second National March on Washington for Lesbian and Gay Rights, Washington, D.C. - October 11, 1987*, registered with the United States Copyright Office, namely Registration Number PA 2-497-525 effective June 18, 2024. A copy of said Certificate is annexed as Exhibit "2."

196.    HUMM has always been, and is now, the owner of all rights, title and interest in and to his Audiovisual Work and the Copyright therein, and said Copyright is valid and subsisting and in full force and effect.

---

[2] *See* https://www.advocate.com/politics/2022/11/17/nancy-pelosis-record-passionate-lgbtq-ally (Website last visited on March 1, 2025).

**FIRST COUNT**

**AGAINST DEFENDANT MSNBC FOR COPYRIGHT INFRINGEMENT
OF PLAINTIFFS' *GAY USA* PELOSI EPISODE**

197.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1
through 196 of this Complaint as if fully set forth herein.

198.    Upon information and belief beginning on or about November 23, 2022 and
continuing through a time presently unknown to Plaintiffs, Defendant MSNBC reproduced,
displayed, performed, and distributed to the public HUMM's Copyrighted Audiovisual Work
*Gay USA* Pelosi Episode in their program *The Last Hour* and upon information and belief by and
through other means, methods and media outlets presently unknown to Plaintiffs.

199.    Upon information and belief, and with full knowledge of Plaintiffs' rights,
Defendant MSNBC infringed Plaintiffs' Copyright in their Audiovisual Work entitled *Gay USA
November 22, 2022 including interview with Rep. Nancy Pelosi at the 1987 March on
Washington for Lesbian and Gay Rights*, namely Registration Number PA 2-484-903, effective
June 27, 2024 by reproducing, displaying, performing, and distributing to the public Plaintiffs'
Copyrighted Audiovisual Work the *Gay USA* Pelosi Episode in their program *The Last Hour* and
upon information and belief by and through other means, methods and media outlets presently
unknown to Plaintiffs.

200.    Upon information and belief the aforementioned reproductions, displays,
performances, and distributions of  Plaintiffs' Copyrighted Audiovisual Work were for profit and
occurred in a large geographical and populous region including within this judicial district.

201.    In December 2022, upon Plaintiffs' learning of the infringement by Defendant

MSNBC, Plaintiffs' attorney contacted Defendant MSNBC's attorneys at the offices of

Defendant NBCU and informed Defendant MSNBC and the MSNBC Defendants that Defendant

MSNBC and the MSNBC Defendants did not have authority or consent to use or to continue to

use Plaintiffs' Copyrighted Audiovisual Work, and requested that Defendant MSNBC and the

MSNBC Defendants cease and desist from any and all reproductions, displays, performances,

and distributions of Plaintiffs' Copyrighted Audiovisual Work and to provide an accounting for

all usages of said Audiovisual Work by Defendant MSNBC and the MSNBC Defendants and to

pay to Plaintiffs a retroactive license fee for all reproductions, displays, performances, and

distributions of Plaintiffs' Copyrighted Audiovisual Work.

202.    Despite said notice to cease and desist and to account for all usages, Defendant

MSNBC and the MSNBC Defendants have failed and refused to account for all usages and have

failed and refused to pay a license fee for all usages.

203.    Despite said notice to cease and desist and to account for usages, Defendant

MSNBC and the MSNBC Defendants continued to allow other entities, including those entities

and persons sued herein as the YAHOO Defendants, and other persons and entities presently

unknown to Plaintiffs, to continue to reproduce, display, perform, and distribute to the public

Plaintiffs' Copyrighted Audiovisual Work within the MSNBC November 23, 2022 program *The

Last Hour*.

204.    From on or about January 2022 through June 2025, Plaintiffs, through their

attorney, attempted to settle this claim with the MSNBC Defendants, through their attorneys.

Since July 2025 MSNBC Defendants' attorneys cut off communication despite representations

that negotiations would continue and Plaintiffs' attorney continuing to reach out.

205.    Plaintiffs' Audiovisual Work is a valuable Copyrighted property in that this Audiovisual  Work provides a current news story, analysis, and commentary about Speaker Pelosi stepping down as Speaker and reports that story with an emphasis of the importance of that event to the LGBTQ+ community, and Speaker Pelosi's role as an advocate for that community. Additionally, Plaintiffs' Audiovisual Work reproduces, displays, and performs the exclusive interview of Representative Pelosi by Plaintiff HUMM. This was an event that was widely reported on in the press, and particularly the press directed to the LGBTQ+ community.

206.    Upon information and belief, MSNBC Defendants' acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to damage Plaintiff unless restrained by this Court.

207.    MSNBC Defendants' acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

208.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of the acts of MSNBC Defendants in an amount thus far not determined.

## SECOND COUNT

### AGAINST DEFENDANT NBCU FOR COPYRIGHT INFRINGEMENT OF PLAINTIFFS' *GAY USA* PELOSI EPISODE

209.    Plaintiffs  incorporate by reference the allegations contained in Paragraphs 1 through 208 of this Complaint as if fully set forth herein.

210.    Upon information and belief beginning on or about November 23, 2022 and continuing through a time presently unknown to Plaintiffs, Defendant NBCU reproduced, displayed, performed, and distributed to the public Plaintiffs' Copyrighted Audiovisual Work the

*Gay USA* Pelosi Episode in the MSNBC program *The Last Hour* on the internet website

msnbc.com and upon information and belief by and through other means, methods and media

outlets presently unknown to Plaintiffs.

211.    Upon information and belief, and with full knowledge of Plaintiffs' rights,

Defendant NBCU infringed Plaintiffs' Copyright in their Audiovisual Work entitled *Gay USA*

*November 22, 2022 including interview with Rep. Nancy Pelosi at the 1987 March on*

*Washington for Lesbian and Gay Rights*, namely Registration Number PA 2-484-903, effective

June 27, 2024 by reproducing, displaying, performing, and distributing to the public Plaintiffs'

Copyrighted Audiovisual Work, the *Gay USA* Pelosi Episode, in the MSNBC program *The Last*

*Hour* on the internet website msnbc.com and upon information and belief by and through other

means, methods and media outlets presently unknown to Plaintiffs.

212.    Upon information and belief the aforementioned reproductions, displays,

performances, and distributions of  Plaintiffs' Copyrighted Audiovisual Work were for profit and

occurred in a large geographical and populous region including within this judicial district.

213.    In December 2022, upon Plaintiffs' learning of the infringement by Defendant

MSNBC, Plaintiffs' attorney contacted Defendant NBCU's attorneys at the offices of Defendant

NBCU and informed Defendant NBCU that Defendant MSNBC and the MSNBC Defendants did

not have authority or consent to use or to continue to use Plaintiffs' Copyrighted Audiovisual

Work, and requested that Defendant NBCU and the MSNBC Defendants cease and desist from

any and all reproductions, displays, performances, and distributions of Plaintiffs' Copyrighted

Audiovisual Work and to provide an accounting for all usages of said Audiovisual Work by

Defendant NBCU and the MSNBC Defendants and to pay to Plaintiffs a retroactive license fee

for all reproductions, displays, performances, and distributions of Plaintiffs' Copyrighted Audiovisual Work.

214.    Despite said notice to cease and desist and to account for all usages, Defendant NBCU and the MSNBC Defendants have failed and refused to account for all usages and have failed and refused to pay a license fee for all usages.

215.    Despite said notice to cease and desist and to account for usages, Defendant NBCU and the MSNBC Defendants continued to reproduce, perform, display, and distribute Plaintiffs' Copyright protected *Gay USA* Pelosi Episode on the internet at the internet website msnbc.com and to allow other entities, including those entities and persons sued herein as the YAHOO Defendants, and other persons and entities presently unknown to Plaintiffs, to continue to reproduce, display, perform, and distribute to the public Plaintiffs' Copyrighted Audiovisual Work within the MSNBC November 23, 2022 program *The Last Hour*.

216.    From on or about January 2022 through June 2025, Plaintiffs, through their attorney, attempted to settle this claim with the NBCU Defendants, through their attorneys. Since July 2025 NBCU Defendant's attorneys cut off communication despite representations that negotiations would continue and Plaintiffs' attorney's reaching out.

217.    Plaintiffs' Audiovisual Work is a valuable Copyrighted property in that this Audiovisual  Work provides a current news story, analysis, and commentary about Speaker Pelosi stepping down as Speaker and reports that story with an emphasis of the importance of that event to the LGBTQ+ community, and Speaker Pelosi's role as an advocate for that community. Additionally, Plaintiffs' Audiovisual Work reproduces, displays, and performs the exclusive interview of Representative Pelosi by Plaintiff HUMM. This was an event that was

widely reported on in the press, and particularly the press directed to the LGBTQ+ community.

218.    Upon information and belief, NBCU Defendant's acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to damage Plaintiffs unless restrained by this Court.

219.    NBCU Defendant's acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

220.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of the acts of MSNBC Defendants in an amount thus far not determined.

<u>**THIRD COUNT**</u>

**AGAINST MSNBC DEFENDANTS and DEFENDANT CAPEHART FOR VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF PLAINTIFFS' *GAY USA* PELOSI EPISODE**

221.    Plaintiffs  incorporate by reference the allegations contained in Paragraphs 1 through 220 of this Complaint as if fully set forth herein.

222.    Defendants MSNBC and NBCU directly infringed the Copyright protected *Gay USA* Pelosi Episode beginning on November 23, 2022 and continuing by reproducing, displaying, performing, and distributing the *Gay USA* Pelosi Episode on cable television and on the internet until upon information and belief May 2023 and perhaps thereafter all without authorization and without Plaintiffs' authorization and Defendants MSNBC and NBCU created unauthorized reproductions, displays, and performances all in violation of Plaintiff's exclusive rights.

223.    The MSNBC Defendants and Defendant CAPEHART are liable as contributory infringers for the Copyright infringement committed by Defendants MSNBC and NBCU's

46

unauthorized reproducing, displaying, performing, and distributing the *Gay USA* Pelosi Episode

on cable television, on the internet website and other means of distribution to the public presently

unknown to Plaintiffs because the MSNBC Defendants and Defendant CAPEHART failed to

exercise proper control over its employees, servants, agents, television production crew, and

contractors. By such conduct the MSNBC Defendants and Defendant CAPEHART caused,

enabled, facilitated, and materially contributed to the infringements by MSNBC and NBCU.

224.    Upon information and belief the MSNBC Defendants and Defendant

CAPEHART had and have actual knowledge of the infringements. Upon information and belief,

the MSNBC Defendants and Defendant CAPEHART have the authority and capacity to review

and approve the content of *The Last Hour*. Upon information and belief, the script, content,

images, and audiovisual works incorporated into *The Last Hour* are subject to multiple levels of

review, modifications, and approvals by the producers, directors, editors, television production

crew, and legal staff assigned to *The Last Hour* to assure that the content of *The Last Hour* is in

compliance with the standards and practice and all laws that pertain to the production of cable

and internet programming delivered to the public.

225.    However, the MSNBC Defendants and Defendant CAPEHART failed to assure

that *The Last Hour* complied with the standards and practice and all laws that pertain to the

production of cable and internet programming delivered to the public and unlawfully allowed for

the unlawful usages of Plaintiffs' *Gay USA* Pelosi Episode as set forth in this Complaint.

226.    Through the conduct described above, the MSNBC Defendants and Defendant

CAPEHART are contributorily liable for the infringements described in this Complaint.

227.    The MSNBC Defendants and Defendant CAPEHART's acts of infringement were

and are deliberate and continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to damage Plaintiffs unless restrained by this Court.

228.    The MSNBC Defendants and Defendant CAPEHART's acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

229.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of the acts of MSNBC Defendants and Defendant CAPEHART in an amount thus far not determined.

230.    The MSNBC Defendants and Defendant CAPEHART are liable as vicarious infringers for the Copyright infringement committed by the unauthorized use of Plaintiffs' *Gay USA* Pelosi Episode.

231.    Upon information and belief  at all times mentioned the MSNBC Defendants and Defendant CAPEHART (i) had the right and ability to control and/or supervise the infringing conduct of MSNBC and NBCU for the Copyright infringement committed by Defendants MSNBC and NBCU's by the unauthorized reproduction, display, performance, and distribution of the *Gay USA* Pelosi Episode on cable television, on the internet website, and by other means of distribution to the public presently unknown to Plaintiffs and subject to discovery, and (ii) had a direct financial interest in, and derived monetary profit, and other consideration, and benefits from the infringement of Plaintiffs' *Gay USA* Pelosi Episode.

232.    The MSNBC Defendants and Defendant CAPEHART derived direct benefit from the infringement that they would otherwise not have had access to without paying a license fee to Plaintiffs.

233.    Through the conduct described above, the MSNBC Defendants and Defendant

48

CAPEHART are vicariously liable for the infringement of Plaintiffs' *Gay USA* Pelosi Episode.

234.    The MSNBC Defendants and Defendant CAPEHART's acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to damage Plaintiffs unless restrained by this Court.

235.    The MSNBC Defendants and Defendant CAPEHART's acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

236.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of the acts of MSNBC Defendants and Defendant CAPEHART in an amount thus far not determined.

<u>**FOURTH COUNT**</u>

**AGAINST MSNBC DEFENDANTS and DEFENDANT CAPEHART
FOR VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT
[17 U.S.C. § 1202(a)]**

237.    Plaintiffs  incorporate by reference the allegations contained in Paragraphs 1 through 236 of this Complaint as if fully set forth herein.

238.    Upon information and belief the MSNBC Defendants and Defendant CAPEHART knowingly, and with the intent to induce, enable, facilitate, or conceal infringement provided false Copyright management information in connection with their infringing activities for the *Gay USA* Pelosi Episode and distributed the *Gay USA* Pelosi Episode with Copyright management information that is false, by obliterating *Gay USA*'s Copyright information by creating a banner in the upper left corner of HUMM's Copyrighted video interview with Nancy Pelosi in a typeface the MSNBC Defendants and Defendant CAPEHART used in its banner headline across the bottom of the frame in which *The Last Hour* was displayed to the public.

239.    The MSNBC banner reads "OCTOBER 11, 1987" altering the Copyright

information of the *Gay USA* Pelosi Episode. *The Last Word* also ran a banner headline across the

bottom of the frame of HUMM's video interview. That banner, generated by the MSNBC

Defendants and used by the MSNBC Defendants and Defendant CAPEHART, covered the word

"USA" [from Gay USA] in its entirety and also partially covered the word "Gay."

240.    The MSNBC Defendants and Defendant CAPEHART thereby altered the

Plaintiffs' Copyright information rendering the source of the *Gay USA* Pelosi Episode

undetectable. HUMM and NORTHROP d/b/a Gay USA owned the Copyright to the *Gay USA*

Pelosi Episode. The MSNBC Defendants and Defendant CAPEHART manipulated Gay USA's

Copyright information creating false indicia, and visual clutter obscuring the actual authors'

claims of authorship or owning of Copyright.

241.    Upon information and belief the MSNBC Defendants and Defendant

CAPEHART had knowledge of and/or reasonable grounds to know that such would induce,

enable, facilitate, or conceal the infringement alleged herein, including allowing for the cablecast,

internet viewing, and continued distribution and display of the *Gay USA* Pelosi Episode in

violation of Plaintiffs' rights.

242.  As a result, Plaintiffs have been damaged.

## FIFTH COUNT

### AGAINST MSNBC DEFENDANTS and DEFENDANT CAPEHART
### FOR MISAPPROPRIATION OF A NEWS STORY
### UNDER NEW YORK STATE COMMON LAW

243.    Plaintiffs  incorporate by reference the allegations contained in Paragraphs 1

through 242 of this Complaint as if fully set forth herein.

244.    The MSNBC Defendants and Defendant CAPEHART's reproduction,

performance, display, and distribution of the HUMM video as shown on the *Gay USA* Pelosi

Episode on the November 23, 2022 cablecast of *The Last Hour* the day before the *Gay USA*

Pelosi Episode could be cablecast, and the day after the *Gay USA* Pelosi Episode was distributed

on the internet on YouTube, constitutes misappropriation of Plaintiffs' news story, analysis, and

commentary of the *Gay USA* Pelosi Episode.

245.    Specifically, such misappropriation of Plaintiffs' November 22, 2022 *Gay USA*

production of the story, analysis, and commentary on Speaker Pelosi's announcement that she

would step down from the Democratic leadership as Speaker of the House in January 2023. For

that day's production, plaintiffs created a one hour *Gay USA* television program which included a

news report about Speaker Nancy Pelosi's announcement. Although the announcement was

generally known, Plaintiffs' news story presented a unique perspective on Speaker Pelosi's

announcement that she would step down from the Democratic leadership in the House in January

2023. Plaintiffs' focus was to cover Speaker Pelosi's career in the House of Representatives with

respect to Speaker Pelosi's dedication to assuring the rights of the LGBTQ+ community and her

advocacy for federal funding the fight and find a cure for HIV/AIDS.

246.    Plaintiffs expended considerable time and expense to produce their story

including the use of  HUMM's 1987 exclusive and historic interview with newly elected

Representative Pelosi while she marched in the 1987 Second March on Washington for Gay and

Lesbian Rights. In obtaining the interview, HUMM went to considerable expense of time and

money to develop his story. HUMM became well informed about the politics, particularly the

politics of the significant politically powerful population of the LGBTQ+ community San

51

Francisco, the city from which Pelosi had been elected, notwithstanding the political power of the LGBTQ+ vote. Pelosi had narrowly won the Democratic Party's nomination for the vacant House seat over a popular Gay activist and politician.

247.    HUMM also incurred considerable expense of time and money to travel to Washington, D.C. to produce news stories during and about the 1987 March. HUMM's news stories had covered LGBTQ+ issues and the scourge of HIV/AIDS. As a result of his knowledge and journalistic focus, upon seeing Pelosi marching, HUMM seized the opportunity and approached Pelosi for an interview which she very willingly gave to HUMM as the only reporter present in the area. This resulted in HUMM's exclusive and historic interview with the newly elected Pelosi.

248.    Plaintiffs have spent decades as journalists developing a vast depth of knowledge of LGBTQ+ issues and interests and LQBTQ+ history and how current news events fit into that history and the interests of the LGBTQ community.

249.    The *Gay USA* Pelosi Episode was time sensitive and was unique in its presentation and to the audience to whom it was directed. Moreover, because *Gay USA* has a long time presence as the source of news, analysis, and commentary about LGBTQ+ issues, it has developed an audience that looks to it for its unique perspective and focus on presenting the news. Plaintiffs and *Gay USA* were the first to focus their news report on Speaker Pelosi's stepping down on Speaker Pelosi's dedication, legislation, and advocacy for the LGBTQ+ community. The MSNBC Defendants and Defendant CAPEHART wrongfully misappropriated the *Gay USA* Pelosi Episode and presented it to the cable audience before *Gay USA* was scheduled to premier its Pelosi Episode on cable television.

250.    Consider the comment made by James Matthew Brown ("Brown") Defendant
CAPEHART's guest that evening on *The Last Hour*. Brown, a self-described "non-heterosexual"
U.S. Navy Sailor who attended the October 1987 Second March on Washington for Lesbian and
Gay Rights, having viewed the *Gay USA* Pelosi Episode with the HUMM video, commented that
he [Brown] had never seen that video before. *The Last Hour* also showed photographs that
Brown provided including a photograph of Brown with Representative Pelosi, his representative
in Congress, at the October 1987 March.

251.    By reproducing, performing, displaying, and distributing Plaintiffs and the *Gay
USA* Pelosi Episode to the public without obtaining permission or paying a license fee, the
MSNBC Defendants and Defendant CAPEHART are and were free-riding on the Plaintiffs and
their *Gay USA* news story produced with a unique theme and focus.

252.    During that narrow window of time to deliver the LGBTQ+ perspective on
Speaker Pelosi's announcement of her stepping down, the MSNBC Defendants and Defendant
CAPEHART  were direct competitors of Plaintiffs and *Gay USA* in presenting the story.

253.    By the fact that the MSNBC Defendants and Defendant CAPEHART copied *Gay
USA*'s story that the MSNBC Defendants and Defendant CAPEHART were using the product
that Plaintiffs and *Gay USA* had developed and produced to present the MSNBC Defendants and
Defendant CAPEHART as the news program to the LGBTQ+ community in place and stead of
Plaintiffs and *Gay USA*.

254.    If the conduct of the MSNBC Defendants and Defendant CAPEHART allowed to
be repeated by others then the ability of others to free-ride would so reduce the incentive of
Plaintiffs and *Gay USA*, and others similarly situated and similarly harmed, to produce news

products that Plaintiffs and Gay USA's existence as journalists to the LGBTQ+ community or the quality of their exclusive style of news reporting is substantially threatened.

255.    The MSNBC Defendants and Defendant CAPEHART have damaged Plaintiffs and *Gay USA* while unjustly enriching the MSNBC Defendants and Defendant CAPEHART and will continue to do so unless enjoined.

256.    Plaintiffs and *Gay USA* are entitled to injunctive relief, damages, and any other remedies available under New York law.

**SIXTH  COUNT**

**AGAINST THE YAHOO DEFENDANTS FOR
COPYRIGHT INFRINGEMENT OF
PLAINTIFFS' *GAY USA* PELOSI EPISODE**

257.    Plaintiffs  incorporate by reference the allegations contained in Paragraphs 1 through 256 of this Complaint as if fully set forth herein.

258    Upon information and belief beginning on or about November 23, 2022 and continuing through a time presently unknown to Plaintiffs, the YAHOO Defendants reproduced, displayed, performed, and distributed to the public Plaintiffs' Copyrighted Audiovisual Work *Gay USA* Pelosi Episode from the MSNBC their program *The Last Hour* on numerous platforms on yahoo.com and upon information and belief by and through other means, methods and media outlets presently unknown to Plaintiffs.

259.    Upon information and belief, and with full knowledge of Plaintiffs' rights, the YAHOO Defendants infringed Plaintiffs' Copyright in their Audiovisual Work entitled *Gay USA November 22, 2022 including interview with Rep. Nancy Pelosi at the 1987 March on Washington for Lesbian and Gay Rights*, namely Registration Number PA 2-484-903, effective

June 27, 2024 by reproducing, displaying, performing, and distributing to the public Plaintiffs'

Copyrighted Audiovisual Work, the *Gay USA* Pelosi Episode in the MSNBC program *The Last*

*Hour* on numerous platforms on yahoo.com and upon information and belief by and through

other means, methods and media outlets presently unknown to Plaintiffs.

260.    Upon information and belief the aforementioned reproductions, displays,

performances, and distributions of  Plaintiffs' Copyrighted Audiovisual Work were for profit and

occurred in a large geographical and populous region including within this judicial district.

261.    In May 2022, upon Plaintiffs' learning of the infringement by the YAHOO

Defendants, Plaintiffs' attorney contacted Yahoo, Inc. and informed the YAHOO Defendants that

the YAHOO Defendants did not have authority or consent to use or to continue to use Plaintiffs'

Copyrighted Audiovisual Work, and requested that the YAHOO Defendants cease and desist

from any and all reproductions, displays, performances, and distributions of Plaintiffs'

Copyrighted Audiovisual Work and to provide an accounting for all usages of said Audiovisual

Work by the YAHOO Defendants and to pay to Plaintiffs a retroactive license fee for all

reproductions, displays, performances, and distributions of Plaintiffs' Copyrighted Audiovisual

Work.

262.    Despite said notice to cease and desist and to account for all usages, the YAHOO

Defendants have failed and refused to account for all usages and have failed and refused to pay a

license fee for all usages.

263.    Plaintiffs' attorney was informed by the attorneys for the MSNBC Defendants that

the YAHOO Defendants contacted the MSNBC Defendants' attorneys and requested that the

MSNBC Defendants account for all usages and to pay to Plaintiffs a retroactive license fee.

MSNBC's attorneys represented that MSNBC would account for all usages and negotiate a license fee on behalf of the YAHOO Defendants.

264.    After that initial contact from MSNBC Defendants' attorneys the MSNBC Defendants and their attorneys have failed and refused to account for all usages by the YAHOO Defendants and have failed and refused to pay to Plaintiffs a retroactive license fee on behalf of the YAHOO Defendants.

265.    Plaintiffs' Audiovisual Work is a valuable Copyrighted property in that this Audiovisual  Work provides a current news story, analysis, and commentary about Speaker Pelosi stepping down as Speaker and reports that story with an emphasis of the importance of that event to the LGBTQ+ community, and Speaker Pelosi's role as an advocate for that community. Additionally, Plaintiffs' Audiovisual Work reproduces, displays, and performs the exclusive interview of Representative Pelosi by Plaintiff HUMM. This was an event that was widely reported on in the press, and particularly the press directed to the LGBTQ+ community.

266.    Upon information and belief, the YAHOO Defendants' acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to damage Plaintiffs unless restrained by this Court.

267.    YAHOO Defendants' acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

268.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of the acts of the YAHOO Defendants in an amount thus far not determined.

<u>**SEVENTH COUNT**</u>

**AGAINST THE MSNBC DEFENDANTS FOR VICARIOUS
AND CONTRIBUTORY COPYRIGHT INFRINGEMENT
FOR THE DIRECT INFRINGEMENT OF
PLAINTIFFS' *GAY USA* PELOSI EPISODE
BY THE YAHOO DEFENDANTS**

269.    Plaintiffs  incorporate by reference the allegations contained in Paragraphs 1

through 268 of this Complaint as if fully set forth herein.

270.    Defendants MSNBC and NBCU directly infringed Plaintiffs' Copyright protected

*Gay USA* Pelosi Episode beginning on November 23, 2022 and continuing by reproducing,

displaying, performing, and distributing the *Gay USA* Pelosi Episode on cable television and on

the internet until upon information and belief May 2023 and perhaps thereafter all without

authorization and without Plaintiffs' authorization and Defendants MSNBC and NBCU created

unauthorized reproductions, displays, and performances all in violation of Plaintiff's exclusive

rights.

271.    The MSNBC Defendants are liable as contributory infringers for the Copyright

infringement committed by the YAHOO Defendants' unauthorized reproducing, displaying,

performing, and distributing the *Gay USA* Pelosi Episode on cable television, on the internet

website and other means of distribution to the public presently unknown to Plaintiffs because the

MSNBC Defendants failed to exercise proper control over its employees, servants, agents,

television production crew, and contractors who provided the *Gay USA* Pelosi Episode to the

YAHOO Defendants. By such conduct the MSNBC Defendants caused, enabled, facilitated, and

materially contributed to the infringements by the YAHOO Defendants.

272.    Upon information and belief the MSNBC Defendants had and have actual

knowledge of the infringements. Upon information and belief, the MSNBC Defendants have the authority and capacity to review and approve the release of *The Last Hour* to the YAHOO Defendants.

273.    However, the MSNBC Defendants failed to assure that *The Last Hour* complied with the standards and practice and all laws that pertain to the production of cable and internet programming delivered to the public and unlawfully allowed for the unlawful usages of Plaintiffs' *Gay USA* Pelosi Episode by the YAHOO Defendants as set forth in this Complaint.

274.    Through the conduct described above, the MSNBC Defendants are contributorily liable for the infringements by the YAHOO Defendants as set forth in this Complaint.

275.    The MSNBC Defendants acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to damage Plaintiff unless restrained by this Court.

276.    The MSNBC Defendants acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

277.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of the acts of MSNBC Defendants in an amount thus far not determined.

278.    The MSNBC Defendants are liable as vicarious infringers for the Copyright infringement committed by the unauthorized use of Plaintiffs' *Gay USA* Pelosi Episode by the YAHOO Defendants.

279.    Upon information and belief  at all times mentioned the MSNBC Defendants (i) had the right and ability to control and/or supervise the infringing conduct of the YAHOO Defendants for the Copyright infringement committed by the YAHOO Defendants by the

unauthorized reproduction, display, performance, and distribution of the *Gay USA* Pelosi Episode

on the YAHOO internet website, and by other means of distribution to the public presently

unknown to Plaintiffs and subject to discovery, and (ii) had a direct financial interest in, and

derived monetary profit, and other consideration, and benefits from the infringement of

Plaintiffs' *Gay USA* Pelosi Episode by the YAHOO Defendants.

280.    The MSNBC Defendants derived direct benefit from the infringements by the

YAHOO Defendants that they would otherwise not have had access to without paying a license

fee to Plaintiffs.

281.    Through the conduct described above, the MSNBC Defendants are vicariously

liable for the infringement of Plaintiffs' *Gay USA* Pelosi Episode by the YAHOO Defendants.

282.    The MSNBC Defendants acts of infringement were and are deliberate and

continuing, and were and are greatly and irreparably damaging to Plaintiffs and will continue to

damage Plaintiffs unless restrained by this Court.

283.    The MSNBC Defendants acts constitute willful Copyright infringement under the

Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

284.    Plaintiffs are suffering irreparable harm and seek monetary damages as a result of

the acts of the MSNBC Defendants in an amount thus far not determined.

## EIGHTH COUNT

### AGAINST DEFENDANT MSNBC FOR COPYRIGHT INFRINGEMENT OF HUMM'S EXCLUSIVE AND HISTORIC VIDEO INTERVIEW WITH REPRESENTATIVE PELOSI

285.    Humm incorporates by reference the allegations contained in Paragraphs 1

through 284 of this Complaint as if fully set forth herein.

286.    Upon information and belief beginning on or about November 23, 2022 and continuing through a time presently unknown to HUMM, Defendant MSNBC reproduced, displayed, performed, and distributed to the public HUMM's Copyrighted Audiovisual Work of his exclusive and historic video interview with Representative Nancy Pelosi at the October 1987 Second March on Washington for Lesbian and Gay Rights in their program *The Last Hour* and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM.

287.    Upon information and belief, and with full knowledge of HUMM's rights, Defendant MSNBC infringed HUMM's Copyright in his Audiovisual Work entitled *Andy Humm interviews U.S. Representative Nancy Pelosi at the Second National March on Washington for Lesbian and Gay Rights, Washington, D.C. - October 11, 1987*, registered with the United States Copyright Office, namely Registration Number PA 2-497-525 effective June 18, 2024, (hereafter the "Pelosi Interview Video") by reproducing, displaying, performing, and distributing to the public HUMM's Copyrighted Audiovisual Work in their program *The Last Hour* and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM.

288.    Upon information and belief the aforementioned reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work were for profit and occurred in a large geographical and populous region including within this judicial district.

289.    In December 2022, upon HUMM's learning of the infringement by Defendant MSNBC, HUMM's attorney contacted Defendant MSNBC's attorneys at the offices of Defendant NBCU and informed Defendant MSNBC and the MSNBC Defendants that Defendant

MSNBC and the MSNBC Defendants did not have authority or consent to use or to continue to use HUMM's Copyrighted Audiovisual Work, and requested that Defendant MSNBC and the MSNBC Defendants cease and desist from any and all reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work and to provide an accounting for all usages of said Audiovisual Work by Defendant MSNBC and the MSNBC Defendants and to pay to HUMM a retroactive license fee for all reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work.

290.    Despite said notice to cease and desist and to account for all usages, Defendant MSNBC and the MSNBC Defendants have failed and refused to account for all usages and have failed and refused to pay a license fee for all usages.

291.    Despite said notice to cease and desist and to account for usages, Defendant MSNBC and the MSNBC Defendants continued to allow other entities, including those entities and persons sued herein as the YAHOO Defendants, and other persons and entities presently unknown to HUMM, to continue to reproduce, display, perform, and distribute to the public HUMM's Copyrighted Audiovisual Work within the MSNBC November 23, 2022 program *The Last Hour*.

292.    From on or about January 2022 through June 2025, HUMM, through his attorney, attempted to settle this claim with the MSNBC Defendants, through their attorneys. Since July 2025 MSNBC Defendants' attorneys cut off communication despite representations that negotiations would continue and HUMM's attorney continuing to reach out.

293.    HUMM's Pelosi Interview Video is a valuable Copyrighted property in that this Audiovisual Work is an exclusive and historic interview with Pelosi about her advocacy and

intended legislative agenda to support the LGBTQ+ community and the fight against HIV/AIDS.

294.     HUMM's Pelosi Interview Video gained new currency in 2022 on the news that Speaker Pelosi was stepping down as Speaker of the House, an event that was widely reported on in the press, and particularly the press directed to the LGBTQ+ community.

295.     Upon information and belief, MSNBC Defendants' acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

296.     MSNBC Defendants' acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

297.     HUMM is suffering irreparable harm and seeks monetary damages as a result of the acts of MSNBC Defendants in an amount thus far not determined.

**NINTH COUNT**

**AGAINST DEFENDANT NBCU FOR COPYRIGHT INFRINGEMENT
OF HUMM'S EXCLUSIVE AND HISTORIC VIDEO
INTERVIEW WITH REPRESENTATIVE PELOSI**

298.     HUMM incorporates by reference the allegations contained in Paragraphs 1 through 297 of this Complaint as if fully set forth herein.

299.     Upon information and belief beginning on or about November 23, 2022 and continuing through a time presently unknown to HUMM, Defendant NBCU reproduced, displayed, performed, and distributed to the public HUMM's Copyrighted Audiovisual Work the Pelosi Interview Video in the MSNBC program *The Last Hour* on the internet website msnbc.com and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM.

300.    Upon information and belief, and with full knowledge of HUMM's rights, Defendant NBCU infringed HUMM's Copyright in his Audiovisual Work the Pelosi Interview Video by reproducing, displaying, performing, and distributing to the public Humm's Copyrighted Audiovisual Work, the Pelosi Interview Video, in the MSNBC program *The Last Hour* on the internet website msnbc.com and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM.

301.    Upon information and belief the aforementioned reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work were for profit and occurred in a large geographical and populous region including within this judicial district.

302.    In December 2022, upon HUMM's learning of the infringement by Defendant MSNBC, HUMM's attorney contacted Defendant NBCU's attorneys at the offices of Defendant NBCU and informed Defendant NBCU that Defendant MSNBC and the MSNBC Defendants did not have authority or consent to use or to continue to use HUMM's Copyrighted Audiovisual Work, and requested that Defendant NBCU and the MSNBC Defendants cease and desist from any and all reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work and to provide an accounting for all usages of said Audiovisual Work by Defendant NBCU and the MSNBC Defendants and to pay to HUMM a retroactive license fee for all reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work.

303.    Despite said notice to cease and desist and to account for all usages, Defendant NBCU and the MSNBC Defendants have failed and refused to account for all usages and have failed and refused to pay a license fee for all usages.

304.    Despite said notice to cease and desist and to account for usages, Defendant NBCU and the MSNBC Defendants continued to reproduce, perform, display, and distribute HUMM's Copyright protected Pelosi Interview Video on the internet at the internet website msnbc.com and to allow other entities, including those entities and persons sued herein as the YAHOO Defendants, and other persons and entities presently unknown to HUMM, continued to reproduce, display, perform, and distribute to the public HUMM's Copyrighted Audiovisual Work within the MSNBC November 23, 2022 program *The Last Hour*.

305.    From on or about January 2022 through June 2025, HUMM, through his attorney, attempted to settle this claim with the NBCU Defendants, through their attorneys. Since July 2025 NBCU Defendant's attorneys cut off communication despite representations that negotiations would continue and HUMM's attorney's reaching out.

306.    HUMM's Audiovisual Work, the Pelosi Interview Video, is a valuable Copyrighted property in that this Audiovisual Work provides a renewed news story now that Speaker Pelosi was stepping down as Speaker. The Pelosi Interview Video reports the story of Pelosi's first taking a seat in the House with an emphasis of her importance to the LGBTQ+ community, and Pelosi's role as an advocate for that community.

307.    Upon information and belief, NBCU Defendant's acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

308.    NBCU Defendant's acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

309.    HUMM is suffering irreparable harm and seeks monetary damages as a result of

64

the acts of MSNBC Defendants in an amount thus far not determined.

## TENTH COUNT

### AGAINST MSNBC DEFENDANTS and DEFENDANT CAPEHART FOR VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT OF HUMM'S EXCLUSIVE AND HISTORIC VIDEO INTERVIEW WITH REPRESENTATIVE PELOSI

310.    HUMM incorporates by reference the allegations contained in Paragraphs 1 through 309 of this Complaint as if fully set forth herein.

311.    Defendants MSNBC and NBCU directly infringed HUMM's Copyright protected Pelosi Interview Video beginning on November 23, 2022 and continuing by reproducing, displaying, performing, and distributing the Pelosi Interview Video on cable television and on the internet until upon information and belief May 2023 and perhaps thereafter all without authorization and without HUMM's authorization and Defendants MSNBC and NBCU created unauthorized reproductions, displays, and performances all in violation of HUMM's exclusive rights.

312.    The MSNBC Defendants and Defendant CAPEHART are liable as contributory infringers for the Copyright infringement committed by Defendants MSNBC and NBCU's unauthorized reproducing, displaying, performing, and distributing HUMM's Pelosi Interview Video on cable television, on the internet website and other means of distribution to the public presently unknown to HUMM because the MSNBC Defendants and Defendant CAPEHART failed to exercise proper control over its employees, servants, agents, television production crew, and contractors. By such conduct the MSNBC Defendants and Defendant CAPEHART caused, enabled, facilitated, and materially contributed to the infringements by MSNBC and NBCU.

313.    Upon information and belief the MSNBC Defendants and Defendant CAPEHART had and have actual knowledge of the infringements. Upon information and belief, the MSNBC Defendants and Defendant CAPEHART have the authority and capacity to review and approve the content of *The Last Hour*. Upon information and belief, the script, content, images, and audiovisual works incorporated into *The Last Hour* are subject to multiple levels of review, modifications, and approvals by the producers, directors, editors television production crew, and legal staff assigned to *The Last Hour* to assure that the content of *The Last Hour* is in compliance with the standards and practice and all laws that pertain to the production of cable and internet programming delivered to the public.

314.    However, the MSNBC Defendants and Defendant CAPEHART failed to assure that *The Last Hour* complied with the standards and practice and all laws that pertain to the production of cable and internet programming delivered to the public and unlawfully allowed for the unlawful usages of HUMM's Pelosi Interview Video as set forth in this Complaint.

315.    Through the conduct described above, the MSNBC Defendants and Defendant CAPEHART are contributorily liable for the infringements of the Pelosi Interview Video described in this Complaint.

316.    The MSNBC Defendants and Defendant CAPEHART's acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

317.    The MSNBC Defendants and Defendant CAPEHART's acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

318.    HUMM is suffering irreparable harm and seeks monetary damages as a result of

the acts of MSNBC Defendants and Defendant CAPEHART in an amount thus far not determined.

319.    The MSNBC Defendants and Defendant CAPEHART are liable as vicarious infringers for the Copyright infringement committed by the unauthorized use of HUMM's Pelosi Interview Video.

320.    Upon information and belief at all times mentioned the MSNBC Defendants and Defendant CAPEHART (I) had the right and ability to control and/or supervise the infringing conduct of MSNBC and NBCU for the Copyright infringement committed by Defendants MSNBC and NBCU's by the unauthorized reproduction, display, performance, and distribution of HUMM's Pelosi Interview Video on cable television, on the internet website, and by other means of distribution to the public presently unknown to HUMM and subject to discovery, and (ii) had a direct financial interest in, and derived monetary profit, and other consideration, and benefits from the infringement of HUMM's Pelosi Interview Video.

321.    The MSNBC Defendants and Defendant CAPEHART derived direct benefit from the infringement that they would otherwise not have had access to without paying a license fee to HUMM.

322.    Through the conduct described above, the MSNBC Defendants and Defendant CAPEHART are vicariously liable for the infringement of HUMM's Pelosi Interview Video.

323.    The MSNBC Defendants and Defendant CAPEHART's acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

324.    The MSNBC Defendants and Defendant CAPEHART's acts constitute willful

Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

325.    HUMM is suffering irreparable harm and seeks monetary damages as a result of the acts of MSNBC Defendants and Defendant CAPEHART in an amount thus far not determined.

## **ELEVENTH COUNT**

### **AGAINST THE YAHOO DEFENDANTS FOR COPYRIGHT INFRINGEMENT OF HUMM'S EXCLUSIVE AND HISTORIC VIDEO INTERVIEW WITH REPRESENTATIVE PELOSI**

326.    HUMM incorporates by reference the allegations contained in Paragraphs 1 through 325 of this Complaint as if fully set forth herein.

327.    Upon information and belief beginning on or about November 23, 2022 and continuing through a time presently unknown to HUMM, the YAHOO Defendants reproduced, displayed, performed, and distributed to the public HUMM's Copyrighted Audiovisual Work the Pelosi Interview Video as incorporated into the MSNBC cable news, analysis, and commentary program *The Last Hour* on numerous platforms on yahoo.com and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM.

328.    Upon information and belief, and with full knowledge of HUMM's rights, the YAHOO Defendants infringed Humm's Copyright in his Audiovisual Work, the Pelosi Interview Video by reproducing, displaying, performing, and distributing to the public HUMM's Copyrighted Audiovisual Work, the Pelosi Interview, in the MSNBC program *The Last Hour* on numerous platforms on yahoo.com and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM.

329.    Upon information and belief the aforementioned reproductions, displays,

performances, and distributions of HUMM's Copyrighted Audiovisual Work were for profit and occurred in a large geographical and populous region including within this judicial district.

330.    In May 2022, upon HUMM's learning of the infringement by the YAHOO Defendants, HUMM's attorney contacted Yahoo, Inc. and informed the YAHOO Defendants that the YAHOO Defendants did not have authority or consent to use or to continue to use HUMM's Copyrighted Audiovisual Work, and requested that the YAHOO Defendants cease and desist from any and all reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work and to provide an accounting for all usages of said Audiovisual Work by the YAHOO Defendants and to pay to HUMM a retroactive license fee for all reproductions, displays, performances, and distributions of HUMM's Copyrighted Audiovisual Work.

331.    Despite said notice to cease and desist and to account for all usages, the YAHOO Defendants have failed and refused to account for all usages and have failed and refused to pay a license fee for all usages.

332.    HUMM's attorney was informed by the attorneys for the MSNBC Defendants that the YAHOO Defendants contacted the MSNBC Defendants' attorneys and requested that the MSNBC Defendants account for all usages and to pay to HUMM a retroactive license fee. MSNBC's attorneys represented that MSNBC would account for all usages and negotiate a license fee on behalf of the YAHOO Defendants.

333.    After that initial contact from MSNBC Defendants' attorneys the MSNBC Defendants and their attorneys have failed and refused to account for all usages by the YAHOO Defendants and have failed and refused to pay to HUMM a retroactive license fee on behalf of

the YAHOO Defendants.

334.    HUMM's Audiovisual Work is a valuable Copyrighted property in that this Audiovisual Work provides a view of a historical event became the subject of a current news story, analysis, and commentary about Speaker Pelosi stepping down as Speaker and reports that story with an emphasis of the importance of that event to the LGBTQ+ community, and Speaker Pelosi's role as an advocate for that community. Speaker Pelosi stepping down as Speaker was an event that was widely reported on in the press, and particularly the press directed to the LGBTQ+ community.

335.    Upon information and belief, the YAHOO Defendants' acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

336.    The YAHOO Defendants' acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

337.    HUMM is suffering irreparable harm and seeks monetary damages as a result of the acts of the YAHOO Defendants in an amount thus far not determined.

## TWELFTH COUNT

**AGAINST THE MSNBC DEFENDANTS FOR VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT FOR THE DIRECT INFRINGEMENT OF HUMM'S EXCLUSIVE AND HISTORIC VIDEO INTERVIEW WITH REPRESENTATIVE PELOSI BY THE YAHOO DEFENDANTS**

338.    HUMM incorporates by reference the allegations contained in Paragraphs 1 through 337 of this Complaint as if fully set forth herein.

339.    Upon information and belief the YAHOO Defendants directly infringed HUMM's

70

Copyright protected Pelosi Interview Video beginning on or about November 23, 2022 and continuing to a time presently unknown by reproducing, displaying, performing, and distributing HUMM's Pelosi Interview Video on numerous platforms on yahoo.com and upon information and belief by and through other means, methods and media outlets presently unknown to HUMM all without authorization and without HUMM's authorization and all in violation of HUMM's exclusive rights.

340.    The MSNBC Defendants are liable as contributory infringers for the Copyright infringement committed by the YAHOO Defendants' unauthorized reproducing, displaying, performing, and distributing *HUMM'S* Pelosi Interview Video on the internet and other means of distribution to the public presently unknown to HUMM because the MSNBC Defendants failed to exercise proper control over its employees, servants, agents, television production crew, and contractors who provided HUMM's Pelosi Interview Video to the YAHOO Defendants. By such conduct the MSNBC Defendants caused, enabled, facilitated, and materially contributed to the infringements by the YAHOO Defendants.

341.    Upon information and belief the MSNBC Defendants had and have actual knowledge of the infringements. Upon information and belief, the MSNBC Defendants had and have the authority and capacity to review and approve the release of *The Last Hour* to the YAHOO Defendants.

342.    However, the MSNBC Defendants failed to assure that *The Last Hour* complied with the standards and practice and all laws that pertain to the production of cable and internet programming delivered to the public and unlawfully allowed for the unlawful usages of HUMM's Pelosi Interview Video by the YAHOO Defendants as set forth in this Complaint.

343.    Through the conduct described above, the MSNBC Defendants are contributorily liable for the infringements by the YAHOO Defendants as set forth in this Complaint.

344.    The MSNBC Defendants' acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

345.    The MSNBC Defendants acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

346.    HUMM is suffering irreparable harm and seeks monetary damages as a result of the acts of MSNBC Defendants in an amount thus far not determined.

347.    The MSNBC Defendants are liable as vicarious infringers for the Copyright infringement committed by the unauthorized use of HUMM's Pelosi Interview Video by the YAHOO Defendants.

348.    Upon information and belief at all times mentioned the MSNBC Defendants (I) had the right and ability to control and/or supervise the infringing conduct of the YAHOO Defendants for the Copyright infringement committed by the YAHOO Defendants by the unauthorized reproduction, display, performance, and distribution of HUMM's Pelosi Interview Video on the YAHOO internet website, and by their other means of distribution to the public presently unknown to HUMM and subject to discovery, and (ii) had a direct financial interest in, and derived monetary profit, and other consideration, and benefits from the infringement of HUMM's Pelosi Interview Video by the YAHOO Defendants.

349.    The MSNBC Defendants derived direct benefit from the infringements by the YAHOO Defendants that they would otherwise not have had access to without paying a license

fee to HUMM.

350.    Through the conduct described above, the MSNBC Defendants are vicariously liable for the infringement of HUMM's Pelosi Interview Video by the YAHOO Defendants.

351.    The MSNBC Defendants acts of infringement were and are deliberate and continuing, and were and are greatly and irreparably damaging to HUMM and will continue to damage HUMM unless restrained by this Court.

352.    The MSNBC Defendants acts constitute willful Copyright infringement under the Copyright Laws, 17 U.S.C. §§ 501 *et seq*.

353.    HUMM is suffering irreparable harm and seeks monetary damages as a result of the acts of the MSNBC Defendants in an amount thus far not determined.

**WHEREFORE**, Plaintiffs respectfully asks the Court to enter Judgment against the respective Defendants as follows:

**IN THE FIRST COUNT:**

A.    That Defendant MSNBC, its officers, agents and servants, and all persons in active concert and in participation with Defendant MSNBC be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever;

B.    That Defendant MSNBC be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.    That Defendant MSNBC be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant MSNBC's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages

as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.    That Defendant MSNBC be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.    That Defendant MSNBC be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.    That Defendant MSNBC be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.    That Defendant MSNBC be required to account for all gains, profits, and advantages derived from its acts of infringement and for other violations of law;

H.    That Defendant MSNBC pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505;

**IN THE SECOND COUNT:**

A.    That Defendant NBCU, its officers, agents and servants, and all persons in active concert and in participation with Defendant NBCU be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever;

B.    That Defendant NBCU  be ordered to present Plaintiffs with an accounting of all

uses made of Plaintiffs' copyrighted Audiovisual Work;

C.    That Defendant NBCU  be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant NBCU 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.    That Defendant NBCU  be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.    That Defendant NBCU  be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505; and,

F.    That Defendant NBCU  be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.    That Defendant NBCU  be required to account for all gains, profits, and advantages derived from its acts of infringement and for other violations of law;

H.    That Defendant NBCU  pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505; and,

**IN THE THIRD COUNT:**

A.1.    That the MSNBC Defendants, their respective officers, agents and servants, and

all persons in active concert and in participation with the MSNBC Defendants  be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever ;

A.2.  That Defendant CAPEHART, individually, and his agents and servants, and all persons in active concert and in participation with Defendant CAPEHART be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever ;

B.1.    That the MSNBC Defendants  be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

B.2.    That Defendant CAPEHART, individually, and his agents and servants, and all persons in active concert and in participation with Defendant CAPEHART  be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.1.    That the MSNBC Defendants  be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant NBCU 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

C.2.    That Defendant CAPEHART  be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant CAPEHART 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.1.     That  the MSNBC Defendants  be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

D.2.     That Defendant CAPEHART  be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.1.     That the MSNBC Defendants  be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

E.2.  That Defendant CAPEHART  be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.1.     That the MSNBC Defendants  be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

F.2.     That Defendant CAPEHART  be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.1.     That the MSNBC Defendants  be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

G.2.    That Defendant CAPEHART be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

H.1.    That the MSNBC Defendants pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505;

H.2.    That Defendant CAPEHART pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505; and,

**IN THE FOURTH COUNT:**

A.1.    That the MSNBC Defendants, their respective officers, agents and servants, and all persons in active concert and in participation with the MSNBC Defendants be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever ;

A.2.    That Defendant CAPEHART, individually, and his agents and servants, and all persons in active concert and in participation with Defendant CAPEHART be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever ;

B.1.    That the MSNBC Defendants be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

B.2.    That Defendant CAPEHART, individually, and his agents and servants, and all persons in active concert and in participation with Defendant CAPEHART be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.1.    That the MSNBC Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant NBCU 's infringement, including actual

damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

C.2.    That Defendant CAPEHART  be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant CAPEHART 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.1.    That  the MSNBC Defendants  be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

D.2.    That Defendant CAPEHART  be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.1.    That the MSNBC Defendants  be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

E.2.    That Defendant CAPEHART  be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.1.    That the MSNBC Defendants  be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

79

F.2.    That Defendant CAPEHART  be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.1.    That the MSNBC Defendants  be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

G.2.    That Defendant CAPEHART  be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

H.1.    That the MSNBC Defendants  pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505;

H.2.    That Defendant CAPEHART  pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505; and,

**IN THE FIFTH COUNT:**

A.1.    Declaring that the MSNBC Defendants have violated the common law of New York State by misappropriating Plaintiffs' Pelosi Episode as the Pelosi Episode was a commercially valuable, and time sensitive News Story;

A.2.    Declaring that Defendant CAPEHART violated the common law of New York State by misappropriating Plaintiffs' Pelosi Episode as the Pelosi Episode was a commercially valuable, and time sensitive News Story;

B.1.    That the MSNBC Defendants, their respective officers, agents and servants, and

all persons in active concert and in participation with the MSNBC Defendants  be enjoined during the pendency of this action and permanently enjoined thereafter from the use of Plaintiffs' Pelosi Episode in any manner whatsoever ;

B.2.    That Defendant CAPEHART, individually, and his agents and servants, and all persons in active concert and in participation with Defendant CAPEHART  be enjoined during the pendency of this action and permanently enjoined thereafter from the use of Plaintiffs' Pelosi Episode in any manner whatsoever;

C.1.    That  the MSNBC Defendants  be required to pay Plaintiffs any profits attributable to the use of Plaintiffs' Pelosi Episode;

C.2.    That Defendant CAPEHART  be required to pay Plaintiffs any profits attributable to the use of Plaintiffs' Pelosi Episode;

D.1.    That  the MSNBC Defendants  be required to pay Plaintiffs a reasonable royalty for the use of Plaintiffs' Pelosi Episode;

D.2.    That Defendant CAPEHART  be required to pay Plaintiffs a reasonable royalty for the use of Plaintiffs' Pelosi Episode ;

E.1.    That the MSNBC Defendants  be required to deliver up to be impounded during the pendency of this action, all copies in their possession, custody, or control of Plaintiffs' Pelosi Episode including all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such copies as well as the copies themselves;

E.2.    That Defendant CAPEHART be required to deliver up to be impounded during the pendency of this action, all copies in their possession, custody, or control of Plaintiffs' Pelosi

81

Episode including all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such copies as well as the copies themselves;

F.1.  That the Court order the MSNBC Defendants to pay to Plaintiffs a monetary award that would compensate Plaintiffs for the misappropriation of Plaintiffs' Pelosi Episode in line with what it would have cost the MSNBC Plaintiffs to produce Plaintiffs' news story;

F.2.  That the Court order Defendant CAPEHART to pay to Plaintiffs a monetary award that would compensate Plaintiffs for the misappropriation of Plaintiffs' Pelosi Episode in line with what it would have cost the CAPEHART to produce Plaintiffs' news story;

G.1.   That the Court order the MSNBC Defendants to pay to Plaintiffs punitive damages in a monetary amount that the Court shall determine adequate to prevent the MSNBC Defendants and others from free-riding on breaking news stories;

G.2.  That the Court order Defendant CAPEHART to pay to Plaintiffs punitive damages in a monetary amount that the Court shall determine adequate to prevent Defendant CAPEHART and others from free-riding on breaking news stories; and,

**IN THE SIXTH COUNT:**

A.      That the YAHOO Defendants, their officers, agents and servants, and all persons in active concert and in participation with the YAHOO Defendants be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever;

B.      That the YAHOO Defendants be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.      That the YAHOO Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of the YAHOO Defendants' infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.      That the YAHOO Defendants be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.      That the YAHOO Defendants be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.      That the YAHOO Defendants be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.      That the YAHOO Defendants be required to account for all gains, profits, and advantages derived from its acts of infringement and for other violations of law;

H.      That the YAHOO Defendants pay to Plaintiffs the costs of this action as provided under the Copyright Laws of the United States of America Section 505;  and,

**IN THE SEVENTH COUNT:**

A.      That the MSNBC Defendants, their respective officers, agents and servants, and all persons in active concert and in participation with the MSNBC Defendants  be enjoined

during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiffs in any manner whatsoever;

B.     That the MSNBC Defendants be ordered to present Plaintiffs with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.     That the MSNBC Defendants be required to pay Plaintiffs such damages as Plaintiffs have sustained by virtue of Defendant NBCU 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.     That  the MSNBC Defendants  be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.     That the MSNBC Defendants be required to pay Plaintiffs' attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.     That the MSNBC Defendants be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiffs' said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.     That the MSNBC Defendants  be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

H.     That the MSNBC Defendants  pay to Plaintiffs the costs of this action as provided

under the Copyright Laws of the United States of America Section 505;

**IN THE EIGHTH COUNT:**

A.     That Defendant MSNBC, its officers, agents and servants, and all persons in active concert and in participation with Defendant MSNBC be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiff in any manner whatsoever;

B.     That Defendant MSNBC be ordered to present Plaintiff with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.     That Defendant MSNBC be required to pay Plaintiff such damages as Plaintiff has sustained by virtue of Defendant MSNBC's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiff's copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.     That Defendant MSNBC be required to pay Plaintiff any profits attributable to the infringements of Plaintiff's copyright;

E.     That Defendant MSNBC be required to pay Plaintiff's attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.     That Defendant MSNBC be required to deliver up to be impounded during the pendency of this action, all copies in their possession, custody, or control that are infringing Plaintiff's copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as

the copies themselves;

G.     That Defendant MSNBC be required to account for all gains, profits, and advantages derived from its acts of infringement and for other violations of law;

H.     That Defendant MSNBC pay to Plaintiff the costs of this action as provided under the Copyright Laws of the United States of America Section 505;  and,

**IN THE NINTH COUNT:**

A.     That Defendant NBCU, its officers, agents and servants, and all persons in active concert and in participation with Defendant NBCU be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiff in any manner whatsoever;

B.     That Defendant NBCU  be ordered to present Plaintiff with an accounting of all uses made of Plaintiff's copyrighted Audiovisual Work;

C.     That Defendant NBCU  be required to pay Plaintiff such damages as Plaintiff has sustained by virtue of Defendant NBCU 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiff's copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.     That Defendant NBCU  be required to pay Plaintiff any profits attributable to the infringements of Plaintiff's copyright;

E.     That Defendant NBCU  be required to pay Plaintiff's attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505; and,

F.     That Defendant NBCU  be required to deliver up to be impounded during the

pendency of this action, all copies in the possession, custody, or control that are infringing

Plaintiff's said copyright and to deliver up for destruction all infringing copies and all

photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any

other matter or materials, whether electronic, digital or otherwise, for making such infringing

copies as well as the copies themselves;

     G.     That Defendant NBCU be required to account for all gains, profits, and

advantages derived from its acts of infringement and for other violations of law;

     H.     That Defendant NBCU pay to Plaintiff the costs of this action as provided under

the Copyright Laws of the United States of America Section 505; and,

     **IN THE TENTH COUNT:**

     A.1.     That the MSNBC Defendants, their respective officers, agents and servants, and

all persons in active concert and in participation with the MSNBC Defendants be enjoined

during the pendency of this action and permanently enjoined thereafter from infringing the

copyright or any other rights of Plaintiff in any manner whatsoever ;

     A.2.     That Defendant CAPEHART, individually, and his agents and servants, and all

persons in active concert and in participation with Defendant CAPEHART be enjoined during

the pendency of this action and permanently enjoined thereafter from infringing the copyright or

any other rights of Plaintiff in any manner whatsoever ;

     B.1.     That the MSNBC Defendants be ordered to present Plaintiff with an accounting

of all uses made of Plaintiff's copyrighted Audiovisual Work;

     B.2.     That Defendant CAPEHART, individually, and his agents and servants, and all

persons in active concert and in participation with Defendant CAPEHART be ordered to present

Plaintiff with an accounting of all uses made of Plaintiff's copyrighted Audiovisual Work;

C.1.    That the MSNBC Defendants be required to pay Plaintiff such damages as Plaintiff has sustained by virtue of Defendant NBCU 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiff's copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

C.2.    That Defendant CAPEHART be required to pay Plaintiff such damages as Plaintiff has sustained by virtue of Defendant CAPEHART 's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiffs' copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.1.    That the MSNBC Defendants be required to pay Plaintiff any profits attributable to the infringements of Plaintiff's copyright;

D.2.    That Defendant CAPEHART be required to pay Plaintiff any profits attributable to the infringements of Plaintiff's copyright;

E.1.    That the MSNBC Defendants be required to pay Plaintiff's attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

E.2.    That Defendant CAPEHART be required to pay Plaintiff's attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.1.    That the MSNBC Defendants be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiff's copyright and to deliver up for destruction all infringing copies and all photographs,

videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

F.2.　　That Defendant CAPEHART be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiff's copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.1.　　That the MSNBC Defendants be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

G.2.　　That Defendant CAPEHART be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

H.1.　　That the MSNBC Defendants pay to Plaintiff the costs of this action as provided under the Copyright Laws of the United States of America Section 505;

H.2.　　That Defendant CAPEHART pay to Plaintiff the costs of this action as provided under the Copyright Laws of the United States of America Section 505; and,

**IN THE ELEVENTH COUNT:**

A.　　That the YAHOO Defendants, their officers, agents and servants, and all persons in active concert and in participation with the YAHOO Defendants be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiff in any manner whatsoever;

B.      That the YAHOO Defendants be ordered to present Plaintiff with an accounting of all uses made of Plaintiffs' copyrighted Audiovisual Work;

C.      That the YAHOO Defendants be required to pay Plaintiff such damages as Plaintiff has sustained by virtue of the YAHOO Defendants' infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiff's copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.      That the YAHOO Defendants be required to pay Plaintiffs any profits attributable to the infringements of Plaintiffs' copyright;

E.      That the YAHOO Defendants be required to pay Plaintiff's attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.      That the YAHOO Defendants be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiff's said copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.      That the YAHOO Defendants be required to account for all gains, profits, and advantages derived from its acts of infringement and for other violations of law;

H.      That the YAHOO Defendants pay to Plaintiff the costs of this action as provided under the Copyright Laws of the United States of America Section 505;  and,

**IN THE TWELFTH COUNT:**

A.     That the MSNBC Defendants, their respective officers, agents and servants, and all persons in active concert and in participation with the MSNBC Defendants  be enjoined during the pendency of this action and permanently enjoined thereafter from infringing the copyright or any other rights of Plaintiff in any manner whatsoever;

B.     That the MSNBC Defendants be ordered to present Plaintiff with an accounting of all uses made of Plaintiff's copyrighted Audiovisual Work;

C.     That the MSNBC Defendants  be required to pay Plaintiff such damages as Plaintiff has sustained by virtue of Defendant NBCU's infringement, including actual damages, statutory damages and damages for willful infringement of Plaintiff's copyright or such damages as to the Court shall appear proper within the provision of the Copyright Laws of the United States of America Section 501 *et seq.*;

D.     That  the MSNBC Defendants be required to pay Plaintiff any profits attributable to the infringements of Plaintiff's copyright;

E.     That the MSNBC Defendants be required to pay Plaintiff's attorney's fees of this suit pursuant to the Copyright Laws of the United States of America Section 505;

F.     That the MSNBC Defendants  be required to deliver up to be impounded during the pendency of this action, all copies in the possession, custody, or control that are infringing Plaintiff's copyright and to deliver up for destruction all infringing copies and all photographs, videotapes, plates, molds, negatives, computer disks, digital recordings and any other matter or materials, whether electronic, digital or otherwise, for making such infringing copies as well as the copies themselves;

G.      That the MSNBC Defendants be required to account for all gains, profits, and advantages derived from their acts of infringement and for other violations of law;

H.      That the MSNBC Defendants  pay to Plaintiff the costs of this action as provided under the Copyright Laws of the United States of America Section 505;

**AND IN ALL CLAIMS FOR RELIEF:**

(A)     Costs of this action, and

(B)     such other legal and equitable relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury.

Respectfully submitted,

THE PENKOVSKY LAW FIRM, P.C.
        Attorneys for Plaintiffs

By:      /Nicholas A. Penkovsky/

Nicholas A. Penkovsky, Esq. NP-0134

43 West 43rd Street
Ste.16
New York, NY 10036

E-Mail: N.Penkovsky.Legal@gmail.com
Tel. (646) 342-7069
Fax (347) 649-9372

Dated: November 20, 2025
        New York, New York