UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ANDY HUMM, ANN NORTHROP, and
ANDY HUMM and ANN NORTHROP d/b/a
GAY USA,

                              Plaintiffs,

            - against -

MSNBC CABLE, LLC,
NBCUNIVERSAL MEDIA, LLC,
COMCAST CORPORATION,
VERSANT MEDIA, LLC,
JONATHAN CAPEHART,
APOLLO GLOBAL MANAGEMENT, INC.,
VERIZON COMMUNICATIONS, INC. t/a
VERIZON COMMUNICATIONS,
YAHOO, INC., JOHN and JANE DOES, INC.
1 through 10, JOHN and JANE DOES, LLC
1 through 10, and JOHN and JANE DOES
INDIVIDUALS 1 through 10,

                            Defendants.
----------------------------------------------------------X

Case No. 25 Civ. 9698 (AS)

**ORAL ARGUMENT REQUESTED**

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO "BALLARD" DEFENDANTS MOTION TO DISMISS THEIR COMPLAINT

---

Dated: New York, New York
      March 30, 2026

THE PENKOVSKY LAW FIRM, P.C.
Attorneys for Plaintiffs Andy Humm, Ann
Northrop, and Andy Humm and Ann Northrop
d/b/a Gay USA
43 West 43rd Street
New York, NY 10036
E-Mail: N.Penkovsky.Legal@gmail.com
Tel. (646) 342-7069
Fax (347) 649-9372

        On the Brief: Nicholas A. Penkovsky, Esq.

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *ii - iii*

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1. Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    2. Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Defendants' Unauthorized Copying . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Plaintiffs' Pleadings Have Put Each Defendant on Notice
           Of the Claims Against Each of Them, Complies with the
           Pleading Requirements of Federal Rule of Civil Procedure 8,
           And Is Not "Group Pleading" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    B.    Plaintiffs Have Stated Viable Causes of Action Against
           All Defendants for Direct Copyright Infringement
           Of Their Two Audiovisual Works . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    C.    Plaintiffs Have Stated a Cause of Action for Secondary Infringement
           by the Msnbc Defendants and Defendant Capehart . . . . . . . . . . . . . . . . . . . . . 19

    D.    Plaintiffs Have Stated a Cause of Action Pursuant
           to Section 1202 of the Copyright Act for Violation of
           The Digital Millennium Copyright Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    E.    Plaintiffs State a Viable Cause of Action Against
           The MSNBC Defendants for Their Misappropriation of
           Plaintiffs' Cable Television News Story Reporting And
           Commenting on Speaker Pelosi Stepping down
           As Speaker of the United States House of Representatives . . . . . . . . . . . . . . . . 21

    F.    Defendants' Use of Plaintiffs' Copyrighted
           Audiovisual Works Is Not a Fair Use. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

## TABLE OF AUTHORITIES

**Cases**

*Andy Warhol Foundation for the Visual Arts, Inc.*
   *v. Goldsmith*, 598 U.S. 508, 509 (2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Arista Records, LLC v. DOE 3*, 604 F.3d 110, 119 (2d Cir. 2010). . . . . . . . . . . . . . . . . . . 12 , 13

*Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544,127 S.Ct. 1955, 1974 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605, 611 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30 - 31

*Boehm v. SportsMem, LLC*, 2019 WL 3239242 (S.D.N.Y. July 18, 2019) . . . . . . . . . . . . . 14, 15

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
   499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gaste v. Kaiserman*, 863 F.2d 1061 (2d Cir.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hachette Book Group, Inc. v. Internet Archive,* 115 F.4th 163 (2024). . . . . . . . . . . . . . . . 29 - 30

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
   471 U.S. 539 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Johnson v. Priceline.com*, 711 F.3d 271, 275 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . 11 - 12

*Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 169 (2d Cir. 2020) . . . . . . . . . . . . . . . . . . . . . 19 - 20

*Mayimba Music, Inc. v. Sony Corporation of America*,
   2014 WL 5334698 (S.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*,
   2022 WL 18027555 (S.D.N.Y. 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913, 931 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**TABLE OF AUTHORITIES** *(cont'd)*

**Cases** *(cont'd)*

*National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d 1997) . . . . . . . . . . . . . 22, 24

*Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*,
     778 F.2d 89, 92 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15 - 16, 17

*Twin  Peaks Productions, Inc. v.*
     *Publications Intern., Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993) . . . . . . . . . . . . . . . . . 17

**Statutes**

17 U.S.C.A. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

17 U.S.C.A. § 106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 - 17, 18

17 U.S.C.A. § 107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28- 29

17 U.S.C.A. § 301. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 - 22

17 U.S.C.A. § 501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

17 U.S.C.A. § 1202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

**Congressional Materials**

H.R. Rep. 94-1476, H.R. Rep. 94-1476 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Treatises**

5 FEDERAL PRACTICE AND PROCEDURE
     (Wright & Miller) § 1237 (4th ed.) (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4 NIMMER ON COPYRIGHT §13 E.02[B][3] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## PRELIMINARY STATEMENT

This is a lawsuit arising from the defendants copying plaintiffs' two copyrighted Audiovisual Works. Plaintiffs are journalists who host a weekly news and commentary program, *Gay USA*. Their program is distributed by cable television, satellite, and over the internet. The MSNBC defendants produce a daily news and commentary program distributed by cable television and over the internet. In November these competitors clashed when defendants copied plaintiffs' works. The lawsuit raises compelling issues of the rights of journalists to their copyrighted works, and the borders of idea misappropriation and copyright infringement.

## I

## STATEMENT OF THE FACTS

The Parties

1. Plaintiffs

### Introduction

Plaintiffs Andy Humm (hereafter "Humm") and Ann Northrop (hereafter "Northrop") are professional journalists. Humm and Northrop have each combined their skills and acumen as journalists with their commitment to social activism, and government service on behalf of some of our nation's historically marginalized and ignored populations to advance the rights and well being of women and LGBTQ+ persons. Eventually, their individual work through the years brought them together in 1996, as co-hosts and co-executive producers of the weekly national cable television program, *Gay USA*.

a. Plaintiff Andy Humm

Mr. Humm is an experienced journalist with more than five decades experience. His

*1*

reporting, analysis and breaking stories have appeared in television, print, and radio in the mainstream press as well as media directed to the interests of the LGBTQ+ community.

Mr. Humm's work has appeared in the New York Times, the New York Post, Poz magazine, and as a regular columnist for GothamGazette. His editorials have appeared on public television, where he hosted *Informed Sources*, *Live Wire*, *Thirteen Live*, and co-hosted *Out in New York*. He was also a regular contributor to *In the Life*, a magazine format television show focused on LGBTQ+ lifestyles.

Mr. Humm has been interviewed on CBS-TV, NBC-TV, and Fox Television. He has interviewed numerous politicians, elected officials, actors, artists, writers, and activists.

Mr. Humm has been honored for his work by the New York Press Association, New York University, the AIDS and Adolescents Network, and other organizations and government agencies. Then- Governor Bill Clinton named Humm an "Arkansas Traveler" in 1990. [Doc.1, ¶ 18].

In addition to his work as a journalist Humm served in numerous public service roles. He was a New York City Human Rights Commissioner from 1991 to 1993. At the height of the AIDS epidemic he became the first Director of Education at the Institute for the Protection of Lesbian and Gay Youth (renamed in 1991 the Hetrick-Martin Institute for lesbian and gay youth after its founders, Dr. Emery Hetrick and Dr. Damien Martin). He also led a coalition to get the New York City Board of Education to approve mandatory explicit AIDS education in the schools and served on the Board's AIDS Advisory Council and Multicultural Advisory Council. Additionally, at this time he was a Board Member of Advocates for Youth, a national organization dedicated to implementing accurate sex education in schools and youth-service

settings. [Doc. 1, ¶ 19].

Relevant to this lawsuit, Humm through his studied knowledge of current events and politics effecting the LGBTQ+ community, his acumen, and journalistic initiative attended the Second National March on Washington for Lesbian and Gay Rights in Washington, D.C. on October 11, 1987. While covering the March he spotted newly elected United States Representative Nancy Pelosi among the thousands of marchers that day. He approached her and conducted his historic and exclusive video interview with her. The interview is a significant record for the LGBTQ+ community because a Congressional Representative promised that she would move the United States government to fund research to find a cure for HIV/AIDS.

b. Plaintiff Ann Northrop

Ann Northrop is a writer, journalist, critic, television news producer, and social activist whose pioneering work has significantly contributed to the feminist movement, political and social recognition of LGBTQ+ rights and rights, and medical and political advances necessary to confront and control the once entirely fatal scourge of HIV/AIDS.

Northrop began her career as a journalist in Washington, D.C. before moving to New York City where she worked at WCBS-TV on the daily morning talk show *Woman* and numerous other roles. Northrop then moved on to the ABC-TV sports division. She continued to write television criticism for her nationally syndicated newspaper column and articles that appeared in *Ms. Magazine* and other publications.

During the 1970's Northrop became active in the peace movement and the evolving feminist movement. Northrop participated in drafting an article analyzing the 1972 Presidential candidates for the premier issue of *Ms. Magazine* the feminist magazine co-founded by the

journalist and social-political activist Gloria Steinem.  Doc. 1 ¶ 23.

Northrop then managed the New York office and recruited and interviewed participants for the landmark study of thousands of straight and gay couples that was published in 1983 as *American Couples: money, work, sex* (New York, Morrow 1983) by Drs. Pepper Schwartz and Philip Blumstein.

In 1981, Northrop returned to broadcast news television as a writer - producer of ABC-TV's *Good Morning America*. She then returned to the CBS News Division to create a transformation of its program, *CBS Morning News*. She worked with its roster of stellar television journalists and correspondents including the original hosts Diane Sawyer and Bill Kurtis[1], Maria Shriver, Meredith Viera, and others. In addition to her role in transforming the program, Northrop produced the five minute hard news segments that appeared at the top of each half hour, and on a daily basis worked with the entire CBS News International operation deciding which international stories CBS will cover and producing the segments from remote locations and from local satellite and land line feed. After five years Northrop resigned from CBS News and became employed as an AIDS educator and an educator on and educator on homosexuality at New York's Hetrick-Martin Institute for Lesbian and Gay Youth ("HMI"), a social service agency.[2] In her role as an HMI educator Northrop visited schools and youth agencies throughout the metropolitan area providing AIDS and HIV education. She engaged in thousands of question and answer sessions on homosexuality and speaking personally about her life as a lesbian. B.

---

[1] Bill Kurtis recently retired as judge and scorekeeper of the popular NPR Radio Show *Wait Wait...Don't Tell Me!*
https://www.nytimes.com/2026/03/10/arts/bill-kurtis-retires-npr-wait-wait-don't-tell-me.html

[2] https://hmi.org/

That work led to Northrop's writing curricula on AIDS, the HIV virus, and the LGBTQ+ community appearing at conferences to teach others on the use of her curriculum.

Northrop recognized the relationship of her work as an AIDS educator to her earlier work in the social movements and joined the nascent group ACT UP/New York (the AIDS Coalition to Unleash Power) and participating in hundreds of "direct action" demonstrations. Expanding her work in advancing the rights of the LGBTQ+ community, Northrop served as a board member of the Gay Games, held in New York City in 1994. She also helped to create and served on the board of the Institute for Gay and Lesbian Strategic Studies, that became the Williams Institute, the leading research center on sexual orientation and gender identity law and public policy, based at UCLA School of Law.[3]

In her work as an activist and experience as a journalist Northrop trained other activists on effective messaging with the news media. She has written regular columns for *QW*, a weekly gay and lesbian lifestyle and political magazine, and *LGNY*, the New York gay newspaper that was renamed Gay City News. She is featured in many books including, *Making History* by Eric Marcus, *Wolf Girls at Vassar* by Anne MacKay, and *Queer in America* by Michelangelo Signorile, among others.

c. Plaintiffs Humm and Northrop d/b/a Gay USA

Beginning in 1996 Humm and Northrop began working together as the co-hosts and co-executive producers of the weekly national hour long cable television program, *Gay USA*. While *Gay USA* provides coverage of local, national and international news, analysis, and

---

[3] https://williamsinstitute.law.ucla.edu/about/who-we-are/ [Website last viewed on November 17, 2025].

commentary of interest to the LGBTQ+ community, it is watched by people of all ages, races, genders and sexual orientations. Humm and Northrop report from the field and in the studio on a vast variety of events, politics, and government legislation that impacts upon the LGBTQ+ community and the nation at large. *Gay USA*'s programs began to be archived in New York University Fales Library. The programs are available for researchers, educators, scholars, and others interested in the history and events of the LGBTQ+ community. Humm and Northrop d/b/a *Gay USA* also make their copyrighted programs and their content available for a license fee to producers of motion pictures, documentaries, television programs, and other news programs.

2. Defendants

**Introduction**

In *Mayimba Music, Inc. v. Sony Corporation of America*, 2014 WL 5334698 (S.D.N.Y. 2014), Judge Alvin K. Hellerstein cited *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir.1988) for the proposition that copyright infringers "are rarely caught red-handed." *Mayimba Music, Inc. v. Sony Corporation of America*, at p. 14. The lawsuit *sub judice* is a prime example of this paradigm. As alleged, Plaintiffs were unaware that defendants MSNBC and NBC Universal had infringed their copyrighted works until Humm received a tip of a potential infringement in late December 2022; at least thirty days after the initial infringement. Despite Plaintiffs' counsel then sending a cease and desist letter leading to MSNBC defendants soon ending their infringing conduct Plaintiffs' counsel then discovered they continued to distribute the infringing program on numerous platforms operated by defendant Yahoo, Inc. This discovery was in May 2023, five months *after* the MSNBC defendants receiving Plaintiffs' counsel's cease and desist letter. Despite Plaintiffs' counsel's efforts to obtain all uses of Plaintiffs' copyrighted works, MSNBC's

attorneys refused to cooperate. This lawsuit against the numerous defendants is an effort to use the various pieces of information Plaintiffs obtained from reviewing internet platforms and reveal the uses of their works that defendants have intentionally concealed.

Separately from the six defendants who have collectively moved for dismissal of this lawsuit, defendant Apollo Global Management, Inc., (hereafter "Apollo")  has also moved to dismiss this lawsuit. Plaintiffs also oppose what at this stage is Apollo's motion that contorts and misstates the facts alleged in the complaint. But as this Court addressed the "Ballard" defendants motion, this Court should be aware that Plaintiffs have recently discovered a brag page on Apollo's website.

The brag is how Apollo has taken ownership of Yahoo, Inc. And intend to control and rebuild the company. The address bar indicate the url is:

https://www.apollo.com/insights-news/insights/2023/11/building-the-yahoo--of-today

The opening hero section of the page reads:

"Since Apollo Funds completed the acquisition of Yahoo!, the company has invested significantly behind the crown jewels of its ecosystem – from Yahoo! Finance to Mail to Sports and more. Learn how Apollo's Private Equity team is working with Yahoo! to help reinvigorate one of the most iconic brands in internet history."

[Website last visited on March 23, 2026.]

In its opposition, Apollo never acknowledges that it owns Yahoo, Inc.

a. The MSNBC Defendants

MSNBC Cable, LLC is in the business of producing television news, analysis, and

commentary programs and other programs, including documentaries, and entertainment programs. MSNBC produced the news, analysis, and commentary program The Last Hour the program that infringed plaintiffs' copyrighted works.

Defendant NBCUNIVERSAL Media, LLC ("NBCU") is also engaged in the business of producing programming for television, including news and commentary programs NBCU was and is the owner of the internet website msnbc.com; the website on which plaintiffs' copyrighted works were infringed.

Defendant Comcast Corporation (hereafter, "COMCAST") was and is engaged in numerous businesses including cablecasting and conducts its businesses for profit through the use of numerous business entities including MSNBC and NBCU.

Defendant Versant Media, LLC (hereafter, "VERSANT") is believed to be a successor to MSNBC or is merely MSNBC renamed or "spun off" by defendant Comcast in a musical chairs of corporate renaming. Versant continues the same programming and the same type of programming as MSNBC. The Last Hour now appears on the cable network MS NOW since MSNBC renamed its cable channel.

b. Defendant Jonathan Capehart

Defendant Jonathan Capehart (hereafter "Capehart") is a journalist. He was the host of The Last Hour program that infringed plaintiffs' copyrighted works. It is believed that Capehart was aware of the infringements and was a participant in the misappropriation of plaintiffs' Gay USA news program story focused on Speaker Pelosi stepping down from her role as Speaker and Capehart participated or precipitated the misappropriation of plaintiffs' Pelosi story that focused on Pelosi's participation in the 1987 Second March on Washington for Gay and Lesbian Rights. It

is alleged that Capehart derived benefit from his alleged misconduct.

c. The Yahoo Defendants

Yahoo, Inc., operates an internet platform that provides, news and information of various types, as well as email services under the URL yahoo.com

Defendant Apollo Global Management, Inc., (hereafter, "Apollo") owns defendant Yahoo with defendant Verizon and therefore each derives financial benefit from direct infringements that appear on Yahoo websites.

Defendant Verizon Communications, Inc. trading as Verizon Communications (hereafter, "Verizon")with Apollo owns defendant Yahoo as a joint venture and derives financial benefit from direct infringements that appear on Yahoo websites.

In the complaint defendants Yahoo, Apollo, and Verizon, are referred to collectively as the "Yahoo Defendants."

d. JOHN and JANE DEFENDANTS

The unknown defendants who participated in direct infringements and for secondary infringements. It is common that only after discovery, or even trial, that the identities of all persons and business entities liable for the infringements become known.

**Defendants Unauthorized Copying of Plaintiffs' Copyrighted Works**

On Tuesday, November 22, 2022, *Gay USA* released its weekly show. It first ran on YouTube and was shown five days after Representative Pelosi, who had become Speaker of the United States House of Representative, stepped down from the role of Speaker. *Gay USA*'s show included a segment about Speaker Pelosi, The segment included Humm's exclusive and historic 1987 interview of then newly elected Representative Pelosi. The Register of Copyrights issued

*9*

Humm and Northrop a Certificate of Copyright Registration for the Gay USA November 22, 2022 program entitled *Gay USA November 22, 2022 including interview with Rep. Nancy Pelosi at the 1987 March on Washington for Lesbian and Gay Rights*, under Registration Number PA 2-484-903, effective June 27, 2024. Doc. 1-1.

Humm's PelosI Interview Video was first shown to the public on October 15, 1987 on Gay Cable Network on Public Access Television from New York City. [Doc. 1, ¶¶ 118 -119]. Humm has obtained a Certificate of Copyright Registration for this video interview entitled *Andy Humm interviews U.S. Representative Nancy Pelosi at the Second National March on Washington for Lesbian and Gay Rights, Washington, D.C. - October 11, 1987*, Registration Number PA 2-497-525 effective June 18, 2024. [Doc. 1 ¶ 195, Certificate is at Doc. 1-2].

As is presently known, the MSNBC defendants cablecast *The Last Hour* that copied plaintiffs' works. The copying was without permission. Additionally, *The Last Hour*'s story about Speaker Pelosi stepping down misappropriated the plaintiffs' idea for a focus of their story on Speaker Pelosi, i.e., her work on behalf of the LGBTQ+ community. *The Last Hour* also used the hook, for that story, Pelosi's marching in the 1987 March for Gay Rights and used *Gay USA*'s materials, as well. *The Last Hour* cablecast its story before *Gay USA* could cablecast its program.

Yahoo ran *The Last Hour* on several of its internet platforms until at least May 2023. This lawsuit ensued.

## II

## ARGUMENT

1. The Standard for the Court to Apply in Reviewing Plaintiffs' Complaint

This is an action for copyright infringement under the 1976 Copyright Act, and New York State common law misappropriation of plaintiffs' television news story. Plaintiffs' Complaint alleges twelve counts against six corporate and one natural person. Plaintiffs allege that defendants directly infringed their two copyrighted works. Plaintiffs further allege that as a result of those direct infringements certain defendants are liable for secondary infringement as either, or both, contributory and vicarious infringers. Finally plaintiffs have Plaintiffs seek relief from defendants for their unlawful conduct.

Plaintiffs' complaint satisfies fully the pleading standard of the Federal Rules of Civil Procedure and the judicial gloss calling for a rigorous review of a pleading. Federal Rule of Civil Procedure 8(a) established a liberal pleading standard that requires only that,

"[a] pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a). (2026 Thomson Reuters).

The Court must accept all factual allegations in the complaint true and draw all reasonable inferences in the plaintiff's favor. *Johnson v. Priceline.com*, 711 F.3d 271, 275 (2d

*11*

Cir. 2013). The allegations in plaintiffs' Complaint state specific facts in a clear and concise manner. These allegations identify the copyrighted works at issue, that the works have been registered with the copyright office, that defendants reproduced plaintiffs' copyrighted works in copies, performed and displayed their works publicly, without plaintiffs' permission and thereby in violation of plaintiffs exclusive rights under the 1976 Copyright Act. Plaintiff's have also stated specific facts that demonstrate that they are entitled to relief for secondary infringement by certain defendants.

In considering a motion to dismiss, the United States Supreme Court has instructed the District Court that a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,127 S.Ct. 1955, 1974 (2007).

## 2. Plaintiffs' Complaint Is Plausible under Iqbal-Twombly

In considering a motion to dismiss, the United States Supreme Court has instructed the District Court that a plaintiff need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,127 S.Ct. 1955, 1974 (2007).

The heightened Twombly standard does not "require[s] complaint to include specific evidence, factual allegations in addition to those required by Rule 8, and declarations from the persons who collected." *Arista Records, LLC v. DOE 3*, 604 F.3d 110, 119 (2d Cir. 2010). "The Federal Rules of Civil Procedure requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Id. citing Twombly*, 550 U.S. 544, 555 (2007) (internal

quotation marks omitted). "The *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC*, 604 F.3d at 120. (Internal and final citations omitted) (Internal quotations marks omitted).

In *Arista Records, LLC*, the Second Circuit noted that allegations made upon information and belief are acceptable when the issue is "defendants' copying and/or distribution of plaintiffs' [work] were without permission. But no more definitive assertion seems possible when the users remain anonymous." *Arista Records, LLC,* 604 F.3d at 121. For example, plaintiffs' complaint that alleges "upon information and belief" that Capehart and other MSNBC defendants engaged in unlawful conduct are based upon plaintiffs own experience in the television news production industry, the sourcing of materials, and the compliance with legal and ethical standards which journalists are taught and then the subsequent duty to comply with those standards. See Doc. # 1, at Third Count and Fourth Count.

Plaintiffs also submit that, at this stage of the litigation, the identities of the defendants who engaged in the unlawful conduct directed at plaintiffs' works cannot be known with certainty. For example, defendant MSNBC Cable, LLC [Doc. # 1] would logically own the website with its name on it msnbc.com. See Doc. #1 at Second Count; and Ninth Count. However, upon information and belief the website is actually owned by co-defendant NBC Universal. [Doc. #1].

Similarly, after investigation, defendant Yahoo, the venerable internet pioneer and iconic and legacy brand is owned by co-defendants Apollo and Verizon. Sources indicate that defendant

Apollo owns 90% of Yahoo and defendant Verizon owns the remaining 10%. [Footnote #].

Defendant Verizon acquired defendant Yahoo's internet business on or about July 2016.

Reportedly the purchase price was in excess of Four Billion dollars US. [Citations in footnote #

at nn. 126, 127.] "In September 2021, investment funds managed by Apollo Global Management

acquired 90% of Yahoo." [Citation in footnote # at n. 131]. During March 2026, on its website

Apollo has posted a video about its management and control of Yahoo. See

https://www.apollo.com/insights-news/insights/2023/11/bui

### A.

### PLAINTIFFS' PLEADINGS HAVE PUT EACH DEFENDANT ON NOTICE OF THE CLAIMS AGAINST EACH OF THEM, COMPLIES WITH THE PLEADING REQUIREMENTS OF  FEDERAL RULE OF CIVIL PROCEDURE 8, and IS NOT "GROUP PLEADING"

Defendants argue that plaintiffs "improperly lump two groups of defendants as the

'MSNBC Defendants' and 'Yahoo Defendants'[4]." Doc. # 40 at p. 34 of 47. Defendants refer to

this as "collective pleading and "group pleading." This averment supposedly prohibits each

defendant from knowing what they have done. Their claims are unfounded.

Defendants' reliance on *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) is

misplaced. In *Atuahhene*, the plaintiff, in his complaint, had failed to identify which defendants

had violated his civil rights by which action. *Atuahene v. City of Hartford*, 10 F. App'x at 34.

Defendants reliance' on *Boehm v. SportsMem, LLC*, 2019 WL 3239242 (S.D.N.Y. July 18, 2019)

is more severely misplace. *Boehm* was a copyright infringement case. *Boehm v. SportsMem,*

---

[4] Plaintiffs complaint refers to the "Yahoo Defendants" as including Yahoo, Inc., Apollo Global Management, Inc., and Verizon Communications, Inc. Apollo Global Management, Inc. Has retained separate counsel from the other defendants and has filed a separate motion to dismiss. Doc. #1.

*LLC*, 2019 WL 3239242 at *1. In assessing the viability of the complaint the District Court stated, "[t]o be sure, nothing in the federal pleading standards, set forth in Rule 8 of the Federal Rules of Civil Procedure, 'prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.'" *Id.* at *2. (Citation omitted.) Neither case relied upon by the MSNBC and the Yahoo Defendants supports their basis for dismissing plaintiffs' claims.

The group pleading doctrine prohibits "'[s]weeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)." *McKenzie-Morris v. V.P. Records Retail Outlet, Inc.*, 2022 WL 18027555 *9 (S.D.N.Y. 2022). However, in *McKenzie-Morris* "the complaint notes that the four VP Defendants are referred to collectively in the complaint as 'VP Records'. ... The Court read[s] these statements to allege that Mr. Chastan was the Executive Vice President of each of the VP Records-related entities in this action, and that each of those defendants is accordingly responsible for the alleged fraud. Plaintiffs have therefore properly alleged fraud against VP Records." *Id.* Thus even under a heightened pleading standard of Rule 9, when the identity of a defendant, named in a group of defendants can be ascertained, the pleading is viable.

A copyright infringement claim should be liberally construed and is subjected only to Federal Rule of Civil Procedure 8(a). 5 FEDERAL PRACTICE AND PROCEDURE (Wright & Miller) § 1237 (4th ed.) (2025) Further, it is important that at this stage of the litigation for all known defendants to be named. This pleading practice assures that should plaintiffs prevail, all responsible parties will be subject to the judgment and equitable relief, and plaintiffs will be assured of collecting damages and all necessary and proper relief will be provided. *See Sygma*

*Photo News, Inc. v. High Soc.Magazine, Inc.*, 778 F.2d 89, 92 (1985) *See also* 4 NIMMER ON COPYRIGHT §13 E.02[B][3] ("[h]olding a parent company vicariously for its subsidiary's infringement 'prevent[s] an entity that profits from infringement from hiding behind undercapitalized dummy operations when the copyright owner eventually sues.'" (Citation omitted) (internal quotation omitted) ([ ] as in original).

**B.**

**PLAINTIFFS HAVE STATED VIABLE CAUSES OF ACTION AGAINST
ALL DEFENDANTS FOR DIRECT COPYRIGHT INFRINGEMENT
OF THEIR TWO AUDIOVISUAL WORKS**

Defendants have violated plaintiffs' exclusive rights afforded to them by the 1976 Copyright Act. In their complaint, plaintiffs have stated a prima facie case of copyright infringement. Plaintiffs are owners of the two copyrighted audiovisual works at issue in this lawsuit. Plaintiffs' rights in their works are set forth in Section 106 of the 1976 Copyright Act. In relevant part Section 106 states:

"the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4) in the case of ... audiovisual works, to perform the copyrighted work publicly;

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or

*16*

other audiovisual work, to display the copyrighted work publicly ..."

17 U.S.C.A. § 106 (Thomson Reuters 2026)

Plaintiffs have alleged that defendants,

(1) reproduced their copyrighted work(s);

(2) prepared derivative works based upon the copyrighted work;

(4) performed their copyrighted works publicly; and

(5) displayed their audiovisual works publicly.

To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991), *accord Twin Peaks Productions, Inc. v. Publications Intern.*, Ltd., 996 F.2d 1366, 1372 (2d Cir. 1993). Plaintiffs own valid copyrights and have alleged have the ownership of their valid copyrights, and that defendants copied original elements of the copyrighted works without permission.

A copyright is infringed by "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122." 17 U.S.C.A. § 501 (Thomson Reuters 2026). Humm submits that all of those named defendants, and the unknown defendants may be liable for the infringements. "All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers. ... That a shell corporation was the nominal publisher of the magazine is irrelevant. Infringers may not shield themselves from liability by dummy corporations ... ." *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (1985). (Internal citations and final citation omitted).

Plaintiffs have alleged that defendants used their audiovisual works without permission.

*17*

Any usage of a copyrighted work without the permission violates the plaintiffs' exclusive right to authorize the use of their audiovisual work by others by 17 U.S.C.A. § 106, "the owner of copyright under this title has the exclusive rights ... to authorize any has the exclusive rights to do and to authorize any of the following: [the rights granted in paragraphs 1 through 6]. 17 U.S.C.A. § 106 (Thomson Reuters 2026).

In his Eighth and Ninth Counts, Humm has alleged sufficient facts to support his claims of copyright infringement against the MSNBC Defendants for their unauthorized usage of his original Audio Visual Work, Humm's Pelosi Interview Video.

In his Eleventh Count, Humm has alleged sufficient facts to support his claim of copyright infringement against the Yahoo Defendants for their unauthorized usage of his original Audio Visual Work, Humm's Pelosi Interview Video.

In their First and Second Counts, plaintiffs have alleged sufficient facts to support their claims of copyright infringement against the MSNBC Defendants for their unauthorized usage of their *Gay USA* Pelosi Episode.

In their Sixth Count, plaintiffs have alleged sufficient facts to support their claims of copyright infringement against the Yahoo Defendants for their unauthorized usage of their *Gay USA* Pelosi Episode.

Humm's audiovisual work is more than a recording of a factual work. In order to conduct this interview, Humm developed considerable background information on the issues confronting the LGBTQ+ community, the history and current events of electoral politics in San Franciso, the city from which Pelolsi was elected, the struggle of San Francisco's LGBTQ+ community to assure their rights. Humm had questions about Pelosi prior to his meeting her and interviewing

*18*

her at the March. Doc. #1.

His questions about her became questions for her at the October 1987 March. Those questions were fixed in his audiovisual work. Humm was not a mere passive observer; he was a focused and working journalist. His audiovisual work is entitled to full protection by the Copyright Law. Any failure to protect his work would not only defeat the purpose and Constitutional to protect authors. Any failure to protect Humm's work would spread throughout the news gathering industry and strip journalists of their important role in investigating and providing the information gathered to the public. The final result would be an industry that loses its informational and the economic vibrancy that allows the public to become informed.

At this stage of the litigation, it is impossible for plaintiffs to determine which of the MSNBC defendants and potentially others infringed their copyrighted works. After discovery or trial, all of those engaged in the violation of his copyright are to be determined.

## C.

### PLAINTIFFS HAVE STATED A CAUSE OF ACTION FOR SECONDARY INFRINGEMENT BY THE MSNBC DEFENDANTS and DEFENDANT CAPEHART

The principles of secondary copyright infringement arise from the common law. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 931 (2005). "One infringes contributorily by intentionally inducing and infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Id.*

Plaintiffs have alleged that the MSNBC Defendants infringed their respective copyrighted Audiovisual works in the MSNBC program *The Last Word*. These direct infringements give rise to claims for secondary infringement.

*19*

Plaintiffs have alleged that the Yahoo defendants infringed their copyrights by the reproduction, display, distribution, and performance of their copyrighted Audiovisual works in *The Last Word*, a program produced by all or some of the MSNBC defendants. These defendants allowed the Yahoo Defendants, and perhaps other to perform and display the infringing episode of *The Last Hour,* Plaintiffs believe that Capehart, as host of *The Last Hour*, and his experience as a journalist not only profited from the infringements of their copyrighted works and declined his right to stop or limit the direct infringements.

The very visible uses of plaintiffs' works give rise to a presumption of secondary liability for the infringement of plaintiffs' works as alleged the Third, Tenth, and Twelfth Counts of the Complaint [Doc. #1].

**D.**

**PLAINTIFFS HAVE STATED A CAUSE OF ACTION PURSUANT TO SECTION 1202 OF THE COPYRIGHT ACT FOR VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**

The Digital MILLENNIUM Copyright Act ("DMCA") prohibits the removal or alteration of CMI[5] "conveyed in connection with" creative works. 17 U.S.C. § 1202©.

CMI includes

"[t]he name of, and other identifying information about, the author ... [or]

copyright owner of the work." Section 1202(b) of the DMCA states: No person

shall, without the authority of the copyright owner or the law ...

(3) distribute, import for distribution, or publicly perform works, copies of works,

---

[5] "CMI" refers to Copyright management Information. *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 169 (2d Cir. 2020).

or phonorecords, knowing that copyright management information has been

removed or altered without authority of the copyright owner or the law, knowing,

or, with respect to civil remedies under section 1203, having reasonable grounds

to know, that it will induce, enable, facilitate, or conceal an infringement of any

right under this title."

*Mango v. BuzzFeed, Inc.*, 970 F.3d at 171.

The infringement stated in the statute "also encompasses an infringement by the

defendant." *Id.*, 970 F.3d at 171.  The MSNBC removed and / or altered two CMI. First, in *The*

*Last Word* the "bug that identified the source of Humm's Pelosi Video as being embedded in the

*Gay USA* program was nearly entirely covered. Second, the MSNBC Defendants ran a generic

chyron across the top of Humm's Pelosi Video with the words, "GAY USA 1987." In fact, the

video is owned by Humm, not Gay USA. Plaintiffs pleaded the scienter requirement. Doc. #1.

**E.**

**PLAINTIFFS STATE A VIABLE CAUSE OF ACTION AGAINST
THE MSNBC DEFENDANTS FOR THEIR MISAPPROPRIATION OF
PLAINTIFFS' CABLE TELEVISION NEWS STORY REPORTING
AND COMMENTING ON SPEAKER PELOSI STEPPING DOWN
AS SPEAKER OF THE UNITED STATES HOUSE OF REPRESENTATIVES**

Plaintiffs cause of action for misappropriation of their news story is not preempted by

section 301 of the Copyright Act. In relevant part, Section 301 states,

"[n]othing in this title annuls or limits any rights or remedies under the common

law or statutes of any State with respect to - -

(1) subject matter that does not come within the subject matter of copyright as

specified by sections 102 and 103, including works of authorship not fixed in any

*21*

tangible medium of expression; ... or (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106..."

17 U.S.C.A. § 301 (Thomson Reuters 2026)

In *National Basketball Ass'n v. Motorola, Inc.*, the Second Circuit made it clear that notwithstanding the preemption of Section 301, "it is generally agreed that a "hot-news" *INS*-like claim survives preemption's preemption." *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 845 (2d 1997). The Second Circuit explains the meaning of "a hot-news *INS*-like claim."  In *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918) ( "*INS*"), the Supreme Court,

> "address[ed] the issues raised by these technological advances, although the technology involved in that case was primitive by contemporary standards. INS involved two wire services, the Associated Press ("AP") and International News Service ("INS"), that transmitted news stories by wire to member newspapers. INS would lift factual stories from AP bulletins and send them by wire to INS papers. INS would also take factual stories from east coast AP papers and wire them to INS papers on the west coast that had yet to publish because of time differentials."  The Supreme Court held that INS's conduct was a common-law misappropriation of AP's property."

> *National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d at 845.

The technological innovation raised by plaintiff's claim is the internet. Plaintiffs original story was first shown on YouTube. One can analogize YouTube to the AP bulletins or AP's stories in east coast newspapers that INS would transmit to the west coast. Here, MSNBC defendants lifted defendants' story and more critically the hook of plaintiffs' story to report on Speaker Pelosi by focusing on her marching in the Second March for Gay and Lesbian Rights in

1987. MSNBC's lift of the idea for plaintiffs' story is readily apparent when one compares Doc. # 41-4, *Gay USA* YouTube version 11-22-2022 (start at 27:13 through 29:26) with Doc. # 41-5, *The Last Word* 11-23-2022. Plaintiffs did not distribute their show on cable television until November 24, 2022. Defendant took the plaintiffs' ideas as shown on YouTube and distributed defendants' focus for a Speaker Pelosi to a national audience one day before plaintiffs could distribute their story. Plaintiffs submit that seeing Capehart speak the line, "the Second National March on Washington..." and then follow it with Humm's video made clear that Capehart and the MSNBC defendants had lifted their idea for the Pelosi story. *The Last Word story* then continues with a man who was also present at the March. This man states that he has never seen the Humm video. Capehart ignores his comment. The entirety of the story is focused on the March.

The Second Circuit also based its holding that common law misappropriation is not preempted by reference to the House Report. *Id.* 105 F.3d at 845.

> "A further limitation on the scope of copyright is set forth in Section 102(b) which states, "(b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C.A. § 102(b)(Thomson Reuters 2026). Congress made clear that ideas were not within the province of the 1976 Copyright Act. "Section 102(b) in no way enlarges or contracts the scope of copyright protection under the present law. Its purpose is to restate, in the context of the new single Federal system of copyright, that the basic dichotomy between expression and idea remains unchanged."

> H.R. Rep. 94-1476, H.R. Rep. 94-1476 (1976).

The MSNBC defendants committed the tort of misappropriation when they accessed plaintiffs Nancy Pelosi Episode and then chose to use the idea of reporting on Speaker Pelosi's

stepping down and not only appropriated Gay USA's focus of Pelosi's work on behalf of the LGBTQ+ community, but also appropriated Gay USA's s. Indisputably, these defendants accessed plaintiffs' Pelosi Episode as evidenced by first, their use of Humm's video with the Gay USA bug as shown in the Gay Pelosi episode, second the defendants' guilty conscience conduct in covering the bug, and adding a generic Gay USA in the same chyron typeface used during the segment, and third having the time to choose to and determine the manner in which to remove and alter Gay USA's copyright management information; the removal and alteration being in violation of 17 U.S.C. § 1201.

In *National Basketball Ass'n v. Motorola*, the Second Circuit set out a five part test for a "'hot-news' *INS*-like claim ...  (I) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened." *National Basketball Ass'n v. Motorola*, 105 F.3d at 845.

Plaintiffs satisfy this test. Plaintiff Humm (I) expended time and expense gathering background information on Representative Pelosi and her election and traveled to Washington, D.C. where he conducted the interview; (ii) the interview was time sensitive; (iii) Humm licenses the video and defendants' failure to pay a license fee is free-riding; (iv) Humm competes with the journalists hosting defendants' news programming; and (v) if the practice of taking without paying continued there would be significant disincentive for Humm to continue gathering news.

Plaintiffs Humm and Northrop d/b/a Gay USA (I) expended time and expense to prepare their November 22 and 24, 2022 news program including production costs; (ii) the focus of the story, Pelosi's work on assuring LGBTQ+ rights and the hook of her at the 1987 March was a time sensitive report; (iii) defendants engaged in free riding by taking the focus and hook of plaintiffs' Pelosi story; (iv) Gay USA is a competing source of news, particularly LGBTQ+ news as Capehart's report made clear; and (v) if defendants' continue to take plaintiffs' stories, plaintiffs' incentive to produce news journalism will be threatened, particularly when a viewer of cable news recognizes that the same story was on MSNBC prior to plaintiffs cablecast of their story.

Although defendants' misappropriation resulted in a fixation in a tangible medium that would be subject to Section 301 preemption, the plaintiffs urge the Court to acknowledge that the misappropriation of plaintiffs' idea, with all of their idea's constituent elements occurred prior to the defendants' fixation of that idea in a tangible medium.

Defendants claim that the story is not time sensitive. However, to focus the story on Pelosi's marching in 1987, is exactly the time sensitive aspect to focus upon. There certainly is free riding by the defendants who misappropriated not only the focus of plaintiffs' story on Pelosi's stepping down but also took elements of plaintiffs' story. And certainly, if *The Last Word* continues to misappropriate plaintiffs' story ideas, and then cable cast plaintiffs' story ideas twenty four hours before plaintiffs' cable cast their stories it is reasonably foreseeable that plaintiff audience would be diminished and their reputations as journalists producing original stories and commentary would be tarnished. Plaintiffs must not be placed in the position of subservience to MSNBC when, in fact, plaintiffs are creating the story ideas.

The Chart on the next page illustrates the sequence of events and the similarities of the MSNBC story to plaintiffs' original story.

**Sequence of Events of MSNBC's Misappropriation of Plaintiffs' *Gay USA* Pelosi Episode**

| Plaintiffs' *Gay USA* Pelosi Episode | MSNBC Defendants' *The Last Hour* Story |
|---|---|
| **11/22/2022** | **11/23/2022** |
| 1. ***Gay USA*** first releases its Pelosi Story. | 1. NBC Defendants release the Pelosi Story on ***The Last Hour***. |
| 2. *Gay USA* is hosted by Humm and Northrop. | 2. *The Last Hour* is guest hosted by defendant **Jonathan Capehart**. |
| 3. *Gay USA*'s Pelosi Story focuses on Pelosi's advocacy for LGBTQ+ rights and the March on Washington. | 3. *The Last* Hour's Pelosi Story focuses on Pelosi's advocacy for LGBTQ+ rights opening with the March on Washington.' |
| 4. *Gay USA*'s Pelosi Story includes Humm's copyrighted 1987 Pelosi video interview. | 4. *The Last Hour*'s Pelosi Story includes Humm's copyrighted 1987 Pelosi video interview. MSNBS Defendants did not license Humm's video. |
| 5. Humm's Video interview includes a "bug" in a stylized typeface in the lower left corner of Humm's Video identifying the source as *Gay USA.* | 5. *The Last Hour* nearly entirely covers the "bug" and floats a generic chyron[6] typeface over the top of Humm's Video that reads "Gay USA 1987". |
| 6. *Gay USA*'s Pelosi Story <u>is in limited distribution via the Internet</u> on YouTube as regularly scheduled and prior to its national and worldwide distribution scheduled for 11/24/2022. | 6. NBC Defendants release the Pelosi Story on *The Last Hour* <u>on national cable television</u>. Upon information and belief the NBC Defendants rerun the Pelosi Story on The Last Hour on national cable television in the early morning hours of 11/24/2022. |
| **11/24/2022**<br>1. ***Gay USA*** releases its 11/22/2022 Pelosi Story on <u>national cable television</u> and via satellite for national. | |

---

[6] The term chyron comes from the Chyron Corporation and refers to on-screen text. https://filmlifestyle.com/what-is-a-chyron/ [Website last visited on March 24, 2026.]

**F.**

**DEFENDANTS' USE OF PLAINTIFFS'
COPYRIGHTED AUDIOVISUAL WORKS
IS NOT A FAIR USE**

In violation of plaintiffs' Section 106 exclusive rights under the Copyright Act, the MSNBC Defendants infringed plaintiffs' copyrighted Audiovisual Works by reproducing, distributed, performed, and displayed Humm's Pelosi Video in the MSNBC program *The Last Word*. Plaintiffs believe that these infringements began on or about November 22, 2022 and continued into January 2023. The MSNBC Defendants also copied a nearly the entirety of Humm's Pelosi Video as it appeared in the *Gay USA* Pelosi Episode thereby infringing plaintiffs' copyrighted program. These infringements were unknown to plaintiffs until the end of December 2022 when they learned the infringements were continuing on msnbc.com.

The Yahoo defendants infringed plaintiffs' respective works when they incorporated *The Last Word* on a number of yahoo.com platforms. Plaintiffs are unaware when these infringements began. But they believe they continued into May 2023.[7]

Defendants now attempt to escape liability for infringement by invoking the Fair Use Defense.[8] Analyzing the facts of the infringements as alleged in the complaint, defendants fair

---

[7] *See* Doc. #2 at ¶ 291 in which a scrivener's error set the date as May 2022.

[8] The fair use defense is codified at Section 107 of the Copyright Act and states:

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

use defense fails. The first consideration is that all parties here are in the news business and are competitors. Defendants used plaintiffs' works for the same purpose as plaintiffs, reporting news.

"The first fair use factor, 'the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes.'" *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 509 (2023) (hereafter "*Warhol v. Goldsmith*"). "The central question it asks is whether the use merely supersedes the objects of the original creation... (supplanting the original), or instead adds something new, with a further purpose or different character." *Id.* (Internal ellipse as in original)(Citations omitted).

Defendants used Humm's Pelosi for the same purpose as Humm, reporting an interview with Pelosi. Defendants used *Gay USA*'s video for the same reason as *Gay USA,* reporting the news and using the interview as a featured aspect of the report. Defendants did not transform any of the audiovisual works. The first factor favors plaintiffs.

The second factor consider, " the nature of the copyrighted work". Although plaintiffs' works are factual in nature. While the Copyright Act "does not protect facts or ideas set forth in a work, [but] it does protect that author's manner of expressing those facts and ideas." *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 187 (2024). Humm chose the manner in which to report the facts Pelosi disclosed, and which facts he actively solicited from her. *Gay USA* chose to feature the interview, in a manner that defendants also copied. The second factor weighs in favor of plaintiffs.

The third factor asks the Court to consider "the amount and substantiality of the portion

---

(4) the effect of the use upon the potential market for or value of the copyrighted work.
The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.17 U.S.C.A. § 107 (Thomson Reuters 2026).

*29*

used in relation to the copyrighted work as a whole." *The Last Word* used almost the entirety of

the Humm Pelosi interview. Where the copy serves as a substitute for the original, the factor

weighs in favor of the copyright owner. *Id.*, 115 F.4th at 188-189. This factor weighs in favor of

Humm. This factor also weighs in favor of *Gay USA*. *Gay USA*'s copyright extends only to

original works and not preexisting work. The *Gay USA* Pelosi story opens with the Humm Pelosi

Interview and once it ends, the story continues with a report and analysis of Pelosi at the March

and her work on behalf of the LGBTQ+ community. Defendants use of *Gay USA*'s Pelosi story,

used the same materials, the report and the same analysis. In essence, defendants used the heart

of the *Gay USA* Pelosi story. By defendants taking the heart of the *Gay USA* Pelosi this factor

also weighs in favor of *Gay USA*. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S.

539, 564-566 (1985).

The fourth factor asks what is "the effect of the use upon the potential market for or value

of the copyrighted work." "As a general matter, a copyright holder is entitled to demand a royalty

for licensing others to use its copyrighted work, and that the impact on potential

licensing revenues is a proper subject for consideration in assessing the fourth factor."*Hachette

Book Group, Inc. v. Internet Archive*, 115 F.4th at 192. (Citation omitted). Plaintiffs license their

audiovisual work. Defendants avoided paying a license fee and harmed plaintiffs. Thus,

defendants have usurped the market for plaintiffs' audiovisual works. *Id.* The fourth factor also

weighs in favor of plaintiffs.

Defendants reliance on *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605,

611 (2006) because the copies they made were are poorly made is specious. The citation to *Bill

Graham* considers the first factor. The copies were made and were accompanied by commentary

about the images copied. Plaintiffs submit, that as a matter of law the Supreme Court decision in

*Warhol* calls into question the holding in *Bill Graham*. Additionally, the only comment made

about plaintiffs' work was by a guest who said he had never seen the video before.

## III

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Ballard Defendants'

Motion be dismissed in its entirety.

Dated: New York, New York
     March 30, 2026

                              Respectfully submitted,

                              THE PENKOVSKY LAW FIRM, P.C.
                              Attorneys for Plaintiffs

                              By:    /s/ Nicholas A. Penkovsky
                              Nicholas A. Penkovsky, Esq. NP-0134

                              43 West 43rd Street
                              New York, NY 10036
                              Tel. (646) 342-7069
                              Fax (347) 649-9372
                              E-Mail: N.Penkovsky.Legal@gmail.com

**WORD COUNT CERTIFICATION**

I, Nicholas A. Penkovsky, herby certify that this Memorandum of Law contains 8,160 words in compliance with Local Civil Rule 7.1. In preparing this certification, I relied upon the word count function of the word processing program used to prepare this Memorandum.

Dated: New York, New York
        March 30, 2026

/s/ Nicholas A. Penkovsky
Nicholas A. Penkovsky, Esq. NP-0134