UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDY HUMM, ANN NORTHROP, and ANDY HUMM AND ANN NORTHROP d/b/a GAY USA,

Plaintiffs,

-against-

MSNBC CABLE, LLC et al.,

Defendants.

25-cv-9697 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

On October 11, 1987, over half a million people marched on Washington, D.C. in support of lesbian and gay rights. Nancy Pelosi—then a brand-new member of Congress—marched with them. She was spotted by plaintiff Andy Humm, a journalist dedicated to covering LGBTQ+ issues, who interviewed her and later received copyrights for the video recording of that interview and for an episode he created in November 2022 with plaintiff Ann Northrop for the program *Gay USA*, covering Representative Pelosi's decision to step down from Democratic leadership of the House.

Plaintiffs say that MSNBC and its host, Jonathan Capehart, used a portion of the video interview without authorization in their own segment on Pelosi's announcement, and that NBCU and Yahoo distributed that segment on their websites. Plaintiffs also say that parts of their episode were copied. So they've sued MSNBC, Capehart, Yahoo, and some of their affiliates for direct and secondary copyright infringement, false copyright management information, and misappropriation. Defendants have moved to dismiss those claims.[1] For the reasons given below, MSNBC, NBCU, and Capehart's motions to dismiss are GRANTED IN PART and DENIED IN PART, and the remaining corporate defendants' motions are GRANTED. The Court gives plaintiffs leave to amend their complaint as to any dismissed claims or defendants.

## BACKGROUND

### I. The parties

Plaintiffs Humm and Northrop are professional journalists with decades of experience and a commitment to reporting on LGBTQ+ issues. Since 1996, they have co-hosted *Gay USA*, a weekly

[1] All defendants except for Apollo Global Management, Inc. have filed a joint motion to dismiss, Dkt. 40. Apollo filed a separate motion to dismiss, Dkt. 44, but joins in the other defendants' arguments, which prevail as to Apollo. *See infra*, Section VI. So for purposes of this motion, there is no need to discuss the two motions separately.

national television program "that provides coverage of local, national and international news, analysis, and commentary of interest to the LGBTQ+ community." Dkt. 1, Compl., ¶¶ 42–43.

At the times relevant to the complaint, defendant MSNBC operated the cable news channel MSNBC. *Id.* ¶ 126. Defendant NBCU is asserted to have owned the website msnbc.com. *Id.* ¶ 56. Defendant Jonathan Capehart served as the substitute host of *The Last Word with Lawrence O'Donnell*, an MSNBC program, on November 23, 2022. *Id.* ¶¶ 78, 80, 128. MSNBC and NBCU were subsidiaries of defendant Comcast during the relevant period. *Id.* ¶¶ 66. And in May 2025, Comcast spun MSNBC off into defendant Versant. *Id.* ¶ 69. The complaint refers to MSNBC, NBCU, Comcast, and Versant collectively as the "MSNBC Defendants." *Id.* ¶ 70.

Verizon is alleged to have engaged in a joint venture with Apollo to control the business of Yahoo. *Id.* ¶ 96. Yahoo, Apollo, and Verizon are collectively alleged to have distributed *The Last Word* on yahoo.com. *Id.* ¶¶ 258, 327. The complaint refers to Yahoo, Verizon, and Apollo collectively as the "Yahoo Defendants." *Id.* ¶ 97.

## II. The Interview

On October 11, 1987, Humm conducted an interview of Representative Pelosi (the "Interview") while she participated in the Second National March on Washington for Lesbian and Gay Rights (the "March"). Dkt. 1 ¶¶ 117, 183; *see* Dkt. 41-1. At the time, Pelosi had just won her first election, and the LGBTQ+ community had questions about whether she would advocate as effectively for them as some of the candidates she had defeated. Dkt. 1 ¶¶ 180, 185. In the Interview, Pelosi "stated that she believed that she was there to work for her constituents," many of whom, she acknowledged, were gay. *Id.* ¶ 186. The Interview "covered [Pelosi's] history as an advocate," including her participation in past marches, and disclosed her intended legislative agenda "to provide more money to fight HIV/AIDS and . . . to protect lesbian and gay rights." *Id.* ¶¶ 117, 187. The Interview "concludes with her speaking directly to the camera and imploring then-President Ronald Reagan to sign legislation to fund research in the fight against AIDS." *Id.* ¶ 117; *see also id.* ¶ 188. In total, the Interview lasts approximately 1 minute and 53 seconds. Dkt. 41-1.

The Interview first aired on October 15, 1987, Dkt. 1 ¶ 118, and it was first registered with the Copyright Office in 2024. *See id.* ¶ 195; Dkt. 1-2.

## III. The Episode

In the decades following the Interview, "Pelosi rose to become a political giant," becoming the first female Speaker of the House in 2007. Dkt. 1 ¶ 120. Among other things, Pelosi became known for her leadership on issues important to the LGBTQ+ community. *Id.* ¶¶ 121–22. On November 17, 2022, following the loss of Democratic control of the House, Pelosi announced that she would step down from House Democratic leadership. *Id.* ¶ 119.

Five days later, Humm and Northrop included a segment on Pelosi's announcement in an episode of *Gay USA* (the "Episode") that they released on YouTube that same day. *Id.* ¶¶ 121–24; Dkt. 41-4. The segment, which lasted approximately 2 minutes and 12 seconds, includes a 58-second clip from the Interview. *Id.* Humm recounts his participation in the Interview, and the hosts

discuss Pelosi's efforts on LGBTQ issues over the course of her career. *Id.* The Episode was then cablecast on November 24, 2022. Dkt. 1 ¶ 125.

### IV. *The Last Word* segment

On November 23, 2022, *The Last Word*, with Capehart as guest host, aired its own 6 minute, 32 second segment on Pelosi stepping down from House leadership. *Id.* ¶¶ 126–28; Dkt. 41-5. The segment begins with a clip from Pelosi's announcement that she would be stepping down, in which she mentions her arrival in Congress in 1987 and the dramatic increase in the House's diversity since then. Dkt. 41-5 at 0:21–0:45.

After Capehart informs viewers that Pelosi attended the March, showing excerpts from a *New York Times* article about the March and photographs from that day, *id.* at 0:45–1:44, a 23-second clip of the Interview is shown, credited to *Gay USA* in the top left corner, *id.* at 1:45–2:08; *see* Dkt. 41-7. The clip includes Pelosi's comments about why she was attending the March and her participation in prior LGBTQ+ events. Dkt. 41-5 at 1:45–2:08. After the Interview clip plays, *The Last Word* shows a photo of James Brown, a Navy veteran, side by side with Pelosi at the March. *Id.* at 2:12–24. It then displays Brown's November 2022 social media post of that photograph, captioned with some of his reflections about meeting Pelosi at the March. *Id.* at 2:24–52. *The Last Word* then cuts to a live interview with Brown, who shares his reaction to hearing that Pelosi was stepping down, his memories of the 1987 meeting, and comments on his experience as a gay man in the military. *Id.* at 2:52–6:53. The segment does not reproduce any portion of the Episode other than the clip from the Interview. Yahoo later posted *The Last Word* episode on its website. Dkt. 1 ¶ 258.

***

Plaintiffs sued, and defendants have moved to dismiss all of plaintiffs' claims.

## LEGAL STANDARD

To survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing a motion to dismiss, a court "accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

Plaintiffs' direct and secondary infringement claims against MSNBC, Capehart, NBCU, and Yahoo survive, but their false-copyright-management-information and misappropriation claims are dismissed with leave to amend, together with their request for statutory damages and attorney's fees. All claims against Comcast, Versant, Verizon, and Apollo are dismissed, with leave to amend.

## I. Plaintiffs have stated direct copyright claims as to the Interview but not the Episode

Defendants assert fair use as to the Interview, but the fair-use factors weigh against them, so those direct-infringement claims against MSNBC, Capehart, NBCU, and Yahoo survive. But plaintiffs have not plausibly alleged that defendants infringed on the additional original elements in the Episode, so those direct-infringement claims against the same four defendants are dismissed.

### A. The fair-use factors do not point decisively in favor of defendants

"Under the Copyright Act, 'the fair use of a copyrighted work . . . for purposes such as criticism, comment, [or] news reporting . . . is not an infringement of copyright.'" *Richardson v. Townsquare Media, Inc.*, 2026 WL 1097502, at *3 (2d Cir. Apr. 23, 2026) (quoting 17 U.S.C. § 107)). Fair use "thus excuses what might otherwise be considered infringing behavior, allowing courts to avoid rigid application of the Copyright Act when it would stifle the very creativity the Act is meant to promote." *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 179 (2d Cir. 2024) (internal quotation marks omitted). To assess fair use, courts consider four non-exclusive statutory factors: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Although courts usually discuss each factor individually, they must "[a]ll . . . be explored, and the results weighed together, in light of the purposes of copyright." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994).

"Because the determination of fair use 'is an open-ended and context-sensitive inquiry,' '[c]ourts most frequently address a proffered fair use defense at summary judgment.'" *Richardson*, 2026 WL 1097502, at *4 (first quoting *Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013)) (then quoting *TCA Television Corp. v. McCollum*, 839 F.3d 168, 178 (2d Cir. 2016)) (internal citations omitted). "[I]n order to warrant dismissal of a complaint, the fair-use factors must point decisively in the defense's favor." *Id*. A complaint can survive dismissal without "a *rejection* of the fair-use defense; it is sufficient that the plaintiff's infringement claim remains 'plausible' after those factors are weighed based on the limited materials [courts] can consider at the pleading stage." *Id.*

***

Defendants fair use arguments boil down to one key point: that their use of the Interview clip is transformative and justified because it serves as a "biographical marker" for *The Last Word*'s segment. But defendants' use is neither as transformative nor as justified as they claim, so the fair use factors do not point decisively in their favor.

#### 1. *Purpose and character of the use*

"In assessing the first factor, courts consider two sub-factors: (i) the extent to which the secondary use is transformative and (ii) whether the secondary use is commercial in nature," with transformative use as "the 'central' question." *Hachette*, 115 F.4th at 179.

As to transformative use, courts evaluate "whether the new work merely supplants the original, 'or instead adds something new, with a further purpose or different character, altering the [original] with new expression, meaning, or message.'" *Id.* (quoting *Campbell*, 510 U.S. at 579). "In addition, that new purpose must supply a sufficient 'justification for copying,' such as providing a 'critique or commentary on the original' or supplying 'information to the public about the copied work' that is not otherwise available." *Richardson*, 174 F.4th at 306–07 (quoting *Romanova v. Amilus Inc.*, 138 F.4th 104, 115 (2d Cir. 2025)). "The use of a work to achieve 'a purpose that is the same as, or highly similar to, that of the original' is more likely to substitute or supplant the original work, and less likely to be considered transformative." *Hachette*, 115 F.4th at 179 (quoting *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023)). In sum, the Court must evaluate the purpose of the new work and then see whether its use is justified to achieve that purpose.

Here, nothing in *The Last Word* segment supplies any substantive critique or commentary about the Interview. Before displaying the Interview, Capehart just mentions that Pelosi was one of hundreds of thousands of people at the March. Later, Brown mentions the Interview only to say that he had never seen it before. Defendants don't argue otherwise, but they claim that the purpose of the Interview was to "cover[] [Pelosi's] history as an advocate and her intended legislative agenda to extend and assure rights to Lesbian and Gay people and her intention to seek funding to fight the scourge of AIDS," Dkt. 1 ¶ 117, while the purpose of the Interview's use in *The Last Word* segment was to "serve[] as a 'biographical anchor' to tell a story about one march participant's memorable encounter with Pelosi 35 years ago." Dkt. 40 at 10 (quoting *SOFA Ent., Inc. v. Dodger Prods.*, 709 F.3d 1273, 1278 (9th Cir. 2013)).

Defendants are correct that "commentary on or criticism of the original work is not required for a finding of fair use," Dkt. 40 at 8, and it's true that some courts have held that using a video clip as a "biographical anchor" can be fair in certain circumstances. But defendants' argument then runs into some problems.

If, as defendants claim, the purpose of using the Interview was to "simply place[] Pelosi at the March on Washington," Dkt. 40 at 13, then defendants need to show that their use was justified in light of that purpose. They fail to meet their burden. Here, as in *Richardson*, defendants' "argument takes as a foregone conclusion that [they] had no reasonable alternative but to embed the post; [but] there is no reason to think that was the case." 174 F.4th at 309. Indeed, defendants *used* a reasonable alternative to achieve their purported purpose: For 12 seconds of the segment, *The Last Word* showed a photograph of Pelosi with Brown at the March. That was more than sufficient to "simply place[] Pelosi at the March" before Brown discussed his interaction with her, so there's no justification for showing the Interview, let alone 23 seconds of it. "While embedding the [Interview clip] may have been more expedient for [defendants], nothing compels a conclusion (and certainly not at this stage) that embedding the [Interview clip] . . . was *reasonable* in relation to [defendants'] limited [new purpose]." *Id.* So defendants' "biographical marker" argument falls short.

Aside from that, the only other plausible purpose for showing 23 seconds of the Interview was to cover Pelosi's history as an advocate and her early goals to support LGBTQ+ rights in Congress. But that purpose "is the same as, or highly similar to" the Interview's original purpose, which makes *The Last Word*'s use "less likely to be considered transformative." *Id*. at 306–07.

In sum, "[n]ot only did [defendants] flunk the tests of transformativeness of the copying and of need to show justification for the copying, but [their] copying was done for a commercial purpose, which, while not dispositive, is more helpful to [plaintiffs] than to [defendants]." *Romanova*, 138 F.4th at 120; *see also Hachette*, 115 F.4th at 184 ("The commercial nature of a secondary use generally weighs against a finding of fair use, especially where the secondary use is only modestly transformative." (cleaned up)). So this factor favors plaintiffs.

### 2. *Nature of the copyrighted work*

"In assessing the second factor, courts consider (i) whether the work is expressive or creative, with greater leeway being allowed to a claim of fair use where the work is factual or informational; and (ii) whether the work is published or unpublished, with the scope of fair use involving unpublished works being considerably narrower." *Hachette*, 115 F.4th at 187 (internal quotation marks omitted). This factor rarely plays a significant role in the determination of a fair use dispute. *Id.*

While this factor tends to favor fair use when the copied work is factual rather than fictional, the Second Circuit has clarified that even nonfiction works can contain original expression close to the core of intended copyright protection because the Act protects the "author's manner of expressing those facts and ideas." *Id.* (quoting *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015)).

Here, defendants emphasize that the Interview is factual and published. Dkt. 40 at 11. Plaintiffs emphasize that Humm "chose the manner in which to report the facts Pelosi disclosed, and which facts he actively solicited from her." Dkt. 51 at 29. Both are true. So this factor, which plays a "minimal role" anyway, is neutral. *Richardson*, 174 F.4th at 308.

### 3. *Amount and substantiality used*

For the third factor, courts consider "whether the quantity and value of the materials used[] are reasonable in relation to the purpose of the copying." *Cariou*, 714 F.3d at 710. The secondary use "must be permitted to conjure up at least enough of the original to fulfill its transformative purpose." *Id.* (cleaned up).

Again, defendants say that the transformative purpose was to place Pelosi at the March (i.e., serve as a "biographical marker," Dkt. 40 at 12). In light of that purpose, it was unreasonable to use the 23-second Interview clip. As discussed above, *no* Interview clip was necessary to fulfill defendants' purported transformative purpose, given that *The Last Word* segment showed a picture of Pelosi at the March with Brown, the Navy veteran, who then spoke about his interactions with her on that day.

And while defendants say that "[t]he Interview clip was part of MSNBC's broader segment on the march, and not its focus," *id.*, a 23-second clip in a six-minute segment is not insignificant. So this factor also favors plaintiffs.

#### 4. *Effect on potential market*

"Factor Four focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original." *Capitol Recs., LLC v. ReDigi Inc.*, 910 F.3d 649, 662 (2d Cir. 2018) (internal quotation marks omitted). In assessing this factor, courts weigh "not only the market harm caused by the particular actions of the alleged infringer, but also the market harm that would result from unrestricted and widespread conduct of the same sort." *Hachette*, 115 F.4th at 189 (quoting *Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 179 (2d Cir. 2018)). Second Circuit "cases have repeatedly recognized this factor as the most important." *Richardson*, 174 F.4th at 310.

This factor also favors plaintiffs. If there were to be a market for Humm's Interview decades after it was filmed, this would be it—i.e., after Pelosi announced that she was stepping down from House leadership, and every major commercial news outlet in the country wanted to run a segment on her and her time in Congress. Indeed, the circumstances alleged in this case may well have been the *only* opportunity for Humm to receive meaningful license fees for use of the Interview. If every major news outlet could use 20-plus-second clips for their segments on Pelosi's announcement without authorization, then that would usurp the market for the Interview.

Plus, as in *Richardson*, "the issue [here] is . . . that [defendants] cannot decisively demonstrate the absence of an effect of its use of the [Interview] on the market for the original video based on the allegations in a complaint that say little or nothing about the nature of that market." 174 F.4th at 311 n.5. So, when viewing the allegations in the light most favorable to plaintiffs, "[defendants'] unauthorized distribution of [the Interview] diminished the value of [plaintiffs'] copyright by diminishing the likelihood that others would seek and pay for a license to publish the [Interview]." *Romanova*, 138 F.4th at 120. And to the extent that defendants emphasize their transformative use to downplay the potential for market harm, they are operating from a false premise. *See supra* (discussing lack of transformative use).

Far from pointing decidedly in favor of defendants, the "most important" factor weighs against them at this stage of the case.

### B. Plaintiffs have not plausibly alleged that MSNBC, Capehart, NBCU, and Yahoo copied or distributed copies of constituent elements of the Episode

To establish a claim of copyright infringement, a plaintiff must show "ownership of a valid copyright," and "copying of constituent elements of the work that are original." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "To satisfy the second element, a plaintiff 'must demonstrate that: (1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a

substantial similarity exists between the defendant's work and the protectible elements of plaintiff's [work].'" *Id.* (quoting *Yurman Design, Inc. v. PAJ Inc.*, 262 F.3d 101, 110 (2d Cir. 2001)).

"[C]opyrights in derivative works secure protection only for the incremental additions of originality contributed by the authors of the derivative works." *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir. 1989). And as defendants note, "[t]he only element of the Episode that appears in *The Last Word* is a clip from the Interview, which is a separately copyrighted work." Dkt. 40 at 14. Plaintiffs' claims alleging direct infringement of the Episode therefore fail.

Plaintiffs claim that the Episode "is a valuable Copyrighted property in that [it] provides a current news story, analysis, and commentary about Speaker Pelosi stepping down as Speaker and reports that story with an emphasis of the importance of that event to the LGBTQ+ community, and Speaker Pelosi's role as an advocate for that community." Dkt. 1 ¶ 205. That's all well and good. But they fail to allege in any non-conclusory way that defendants' *Last Word* segment copied any original elements of the Episode. The Episode, in plaintiffs' own characterization, "opens with the Humm Pelosi Interview and once it ends, the story continues with a report and analysis of Pelosi at the March and her work on behalf of the LGBTQ+ community." Dkt. 51 at 30. Defendants' segment, on the other hand, opens with a different clip of Pelosi's announcement that she would be stepping down, introduces Pelosi's participation in the March with an excerpt from a New York Times article, continues with the Humm Pelosi Interview, then segues to Navy veteran James Brown's personal reflections on his experience with Pelosi. Dkt. 41-5 at 0:21-6:53. Aside from the general and unsupported claim that defendants used "the same analysis" as the Episode, Plaintiffs fail to identify any original elements—aside from the use of the Interview—that defendants may have copied from the Episode. Dkt. 51 at 30.

Plaintiffs may have had an exclusive right to reproduce the Interview, but they do not have the exclusive right to make a news segment about Pelosi's participation in the March and her legacy of LGBTQ+ rights advocacy. *See, e.g. Monbo v. Nathan*, 623 F. Supp. 3d 56, 94 (E.D.N.Y. 2022) (holding copyright plaintiffs did not "have the exclusive right to make docu-fiction about dirt-bike riders, as methods of story-telling are not protectable"). Their direct infringement claims with respect to the Episode are dismissed with leave to amend.

### II. Plaintiffs have stated claims for secondary copyright infringement against the MSNBC Defendants and Capehart

Plaintiffs assert four secondary-infringement claims: (1) that the MSNBC Defendants and Capehart committed vicarious and contributory infringement in connection with MSNBC and NBCU's use of the Episode (Count 3), (2) that the MSNBC Defendants committed vicarious and contributory infringement in connection with Yahoo's use of the Episode (Count 7), (3) that the MSNBC Defendants and Capehart committed vicarious and contributory infringement in connection with MSNBC and NBCU's use of the Interview (Count 10), and (4) that the MSNBC Defendants committed vicarious and contributory infringement in connection with Yahoo's use of the Interview (Count 12).

"Without a showing of a direct copyright infringement, secondary liability cannot be maintained." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018). Because plaintiffs have not adequately alleged that any direct infringement of the Episode took place, Counts 3 and 7—their secondary-infringement claims regarding the Episode—are also dismissed.

"Once a direct infringement claim by a third-party is established, a defendant may be held liable for contributory copyright infringement if, with knowledge of the infringing activity, it materially contributes to the infringing conduct of the third party." *Hartmann v. Amazon.com, Inc.*, 2021 WL 3683510, at *6 (S.D.N.Y. Aug. 19, 2021) (internal quotation marks omitted). "The knowledge required [for contributory infringement] is constructive, such that persons who 'know *or have reason to know* of the direct infringement' may be liable." *Id.* (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010)). And material contribution requires that a defendant "encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement." *Id*.

Plaintiffs' allegations are sufficient to draw the reasonable inference that the MSNBC Defendants and Capehart knew or had reason to know of the direct infringement by MSNBC, NBCU, and Yahoo, and materially contributed to that infringement.[2] Plaintiffs allege that these defendants "had and have actual knowledge of the infringements" because they "have the authority and capacity to review and approve the content of *The Last [Word]*," which employs "producers, directors, editors, television production crew, and legal staff" to engage in "multiple levels of review, modifications, and approvals" to ensure that the "audiovisual works incorporated into" the program are "in compliance with the standards and practice and all laws that pertain to the production of cable and internet programming delivered to the public." Dkt. 1 ¶¶ 224, 313. Indeed, *The Last Word* attributes the video clip of the Interview to *Gay USA*. Dkt. 41-5 at 1:45-2:08. And plaintiffs allege that they sent MSNBC Defendants cease and desist letters upon discovering the alleged infringement. Dkt. 1 ¶¶ 289-91. These allegations, taken together, are enough to establish an inference of knowledge. *Cf. Hartmann*, 2021 WL 3683510, at *6 ("Evidence of such knowledge may be found in cease-and-desist letters . . . and industry experience.").

Plaintiffs then allege that these defendants knowingly "failed to [en]sure" compliance and "unlawfully allowed for" the use of plaintiffs' copyrighted works. Dkt. 1 ¶ 314.; *see also id.* ¶¶ 272, 341 ("[T]he MSNBC Defendants have the authority and capacity to review and approve the release of *The Last Hour* to the YAHOO Defendants."). And where, as here, a defendant "'learns of specific infringing material available on his [program] and fails to purge such material' . . . that party . . . may be liable for contributory copyright infringement." *Arista Recs. LLC v. Lime Grp. LLC*,

---

[2] To the extent Count 10 of the complaint is brought against MSNBC for infringement allegedly committed by MSNBC, or against NBCU for infringement committed by NBCU, that claim is dismissed with respect to those defendants. *See Hartmann*, 2021 WL 3683510, at *6 ("To establish secondary infringement claims under a theory of contributory or vicarious infringement, a plaintiff must first adequately allege direct infringement by a party other than the defendant.").

784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (using this as an example of a "material contribution," in contrast to an example of "peripheral[] involve[ment]") (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)). Because it is plausible that these defendants had "reason to know" that *The Last Word* infringed upon the Interview, yet allowed the infringing material to be produced, aired, and re-posted, plaintiffs have adequately alleged contributory infringement.

Given that plaintiffs' secondary-infringement claims survive based on a theory of contributory infringement, the Court need not address the vicarious-infringement theory.

### III. Plaintiffs cannot recover statutory damages or attorney's fees under the operative complaint

Section 412 of the Copyright Act precludes attorney's fees and statutory damages for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412.

Here, plaintiffs allege that defendants' infringement began on November 23, 2022. *See* Dkt. 1 ¶¶ 198, 210, 258, 286, 299, 327. And plaintiffs did not register either copyright until June 2024, Dkts. 1-1; 1-2, more than three months after the Interview was first published in 1987 and the Episode was first published in November 2022. So Section 412 bars the recovery of statutory damages and fees. *See, e.g.*, *Fischer v. Forrest*, 2017 WL 2992663, at *13 (S.D.N.Y. July 14, 2017); *Goswami v. Sweet Reason US Co.*, 2025 WL 917831, at *3 (E.D.N.Y. Mar. 25, 2025).

Any amended complaint may not seek those remedies absent allegations that overcome Section 412's "bright-line rule." *Fischer*, 2017 WL 2992663, at *12.

### IV. Plaintiffs have failed to state a claim for false copyright management information

In their complaint, plaintiffs try to allege a claim for provision of false copyright management information ("CMI") under Section 1202(a) of the Digital Millenium Copyright Act. Dkt. 1 ¶¶ 237–42; *see* 17 U.S.C. § 1202(a). To establish a violation of that subsection, "a plaintiff must prove that (1) the defendant provided, distributed, or imported for distribution CMI in connection with a copyrighted work; (ii) the CMI was false; and (iii) the defendant knew the CMI was false; and (iv) acted with the intent to induce, enable, facilitate, or conceal an infringement." *Shihab v. Source Digital, Inc.*, 2024 WL 3461351, at *8 (S.D.N.Y. July 18, 2024).

Defendants first argue that this claim fails out of the gate because they provided no CMI, let alone false CMI. Instead of responding to those arguments, plaintiffs try to assert a new claim under Section 1202(b) concerning the removal or alteration of CMI. Dkt. 51 at 21. But "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015). So this claim is dismissed, with leave to amend. For any Section 1202 claims that plaintiffs seek to assert, they should be prepared to respond to all the arguments that defendants raise. *See* Dkt. 40 at 19–21; Dkt. 56 at 7–9.

## V. Plaintiffs' misappropriation claim is preempted

The MSNBC defendants and Capehart argue that plaintiffs' misappropriation claim against them is barred by Section 301 of the Copyright Act.

Section 301 "preempts state law claims to the extent that they assert rights equivalent to those protected by the Copyright Act, in works of authorship within the subject matter of federal copyright." *Jackson v. Roberts*, 972 F.3d 25, 34 (2d Cir. 2020). Although preemption is an affirmative defense, dismissal is appropriate if preemption "is evident from the face of the complaint." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 300 (2d Cir. 2022). "In applying this statute to determine if a state law claim is preempted by the Copyright Act, courts in this Circuit apply a two-part test, both parts of which must be satisfied for preemption to apply." *Id.*

At part one, the court "looks at the work that would be affected by the plaintiff's exercise of a state-created right, and requires (as an essential element of preemption) that the work come within the subject matter of copyright as specified by sections 102 and 103 of the Copyright Act." *Id.* at 301 (cleaned up). Here, the Interview and Episode are audiovisual works under the Copyright Act. *See* 17 U.S.C. § 102(a)(6); *see also* Dkt. 1 ¶ 85. It does not matter that, at least with respect to the Episode, plaintiffs also allege the reproduction of uncopyrightable ideas and themes, such as Pelosi's importance to the LGBTQ+ community. *See Greer v. Fox News Media*, 2023 WL 2671796, at *1 (2d Cir. Mar. 29, 2023) ("[A]lthough copyright *protection* does not extend to an idea, we have explained that where the ideas that are the subject of the claim were fixed in writing—whether or not the writing itself is at issue—the claim is within the subject matter of copyright for purposes of *preemption*." (cleaned up)). Here, the Episode was fixed in writing when it "was distributed on the internet on YouTube" on November 22, 2022, so part one of the test is satisfied. Dkt. 1 ¶ 244; *see* U.S. Copyright Office, *Compendium of Copyright Office Practices* § 305 (3d ed. 2021) ("[A] song recorded in a digital audio file" is a work "fixed by [its] very nature."). Although plaintiffs focus on when *defendants* fixed the idea in a tangible medium, Dkt. 51 at 25, that's irrelevant here, given that plaintiffs did so first and don't allege any misappropriation before that point.

At part two of the test, the court "looks at the right being asserted . . . and requires (for preemption to apply) that the right be *equivalent* to any of the exclusive rights within the *general scope of copyright* as specified by section 106 [of the Copyright Act]." *Melendez*, 50 F.4th at 301 (quoting *Jackson*, 972 F.3d at 43). "In other words, the challenged act must by itself, infringe one of the exclusive rights provided by federal copyright law through reproduction, adaptation, performance, distribution or display." *Id.* at 307 (internal quotation marks omitted). Neither side disputes that plaintiffs satisfy this requirement because they base their claim in the "reproduction, performance, display and distribution of the" Interview "as shown on the" Episode and the "story, analysis, and commentary [in the Episode] on Speaker Pelosi's announcement." Dkt. 1 ¶ 244; *see id.* ¶ 135; Dkt. 40 at 22; Dkt. 51 at 21–26.

That said, plaintiffs argue that their misappropriation claim falls within a "hot news" exception to preemption. That exception "is about the protection of property rights in time-sensitive information so that the information will be made available to the public by profit seeking entrepreneurs." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 853 (2d Cir. 1997). In other words, it ensures that there is "an incentive to collect 'hot news.'" *Id.* To satisfy the exception, plaintiffs must show (in addition to the elements of copyright infringement), "(i) the time-sensitive value of factual information, (ii) the free-riding by a defendant, and (iii) the threat to the very existence of the product or service provided by the plaintiff." *Id.*

Plaintiffs flunk the test at the first element. The Interview was recorded *decades* before the MSNBC defendants and Capehart allegedly misappropriated it. So it was not "hot" news. *See ML Genius Holdings LLC v. Google LLC*, 2022 WL 710744, at *6 (2d Cir. Mar. 10, 2022). Plaintiffs also claim that "the MSNBC defendants lifted . . . the hook of plaintiffs' [Episode]" after seeing it on YouTube and misappropriated the "focus" and "idea for" it. Dkt. 51 at 22–25. But the "hook," "focus," or "idea for" the Episode is not "factual information," so it is outside the scope of the exception.

The misappropriation claim is dismissed, with leave to amend for plaintiffs to try address the preemption issue.

## VI. The claims against Comcast, Versant, Verizon, and Apollo are dismissed due to lack of fair notice

Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001) (quoting *Ferro v. Ry. Express Agency, Inc.*, 296 F.2d 847, 851 (2nd Cir. 1961)). A complaint "fail[s] to satisfy this minimum standard" when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct." *Id.*

Defendants argue that plaintiffs "improperly lump two groups of defendants as the 'MSNBC Defendants' and 'Yahoo Defendants.'" Dkt. 40 at 26 (discussing Counts 3–7 and 10–12). They also claim that plaintiffs "collectively pleaded against the MSNBC Defendants and Capehart." *Id.* (discussing Counts 3, 4, 5, and 10).

As to MSNBC, NBCU, and Capehart, plaintiffs' allegations provide a factual basis to distinguish those defendants' conduct. For instance, plaintiffs allege that MSNBC operated the cable news channel MSNBC at all times relevant to the complaint, Dkt. 1 ¶ 126, that NBCU owned the website msnbc.com, *id.* ¶ 56, that Capehart served as the substitute host of *The Last Word* on November 23, 2022, *id.* ¶¶ 78, 80, 128, and that Yahoo distributed *The Last Word* on yahoo.com, *id.* ¶¶ 258, 327. As discussed above, plaintiffs' further allegations plausibly tie these defendants to the alleged infringement.

But plaintiffs offer no allegation as to any action that Comcast, Versant, Verizon, or Apollo took individually. So the claims against these defendants are dismissed, with leave to amend to

provide a factual basis to distinguish these defendants' conduct. Plaintiffs should ensure that their revised allegations address the 12(b)(6) arguments raised as to these defendants. *See, e.g.*, Dkt. 40 at 27 (discussing Versant); Dkt. 44 at 6–10 (discussing Apollo).

## CONCLUSION

For the reasons stated above, plaintiffs' false CMI and misappropriation claims are dismissed with leave to amend, together with all claims against Comcast, Versant, Verizon, and Apollo. Plaintiffs are also precluded from recovering statutory damages or attorney's fees absent revised allegations that overcome Section 412. Plaintiffs' claims for direct and secondary infringement of the Episode are dismissed with leave to amend, but their remaining claims against the other defendants survive.

Within 14 days of the date of this Opinion and Order: (1) plaintiffs may amend their complaint as to the dismissed claims and defendants; and (2) the parties should submit by letter-motion a proposed case management plan that addresses the schedule for discovery and summary judgment in this case.

The Clerk of Court is respectfully directed to terminate Dkts. 39, 42, and 49.

SO ORDERED.

Dated: September 22, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge